### NOLAN COUNTY v. W. B. SIMPSON & CO.

#### No. 6203.

1. **Act of Partner Outside of the Firm Business.**—One member of a firm engaged in a general mercantile and a limited exchange business can contract with a county on his own account to negotiate county bonds. If such contract was intended to be on his own account, was unauthorized by the firm, nor subsequently approved by it, then his act would not bind the other members of the firm.

2. **Same.**—This rule would obtain even if the county officials believed they were dealing with the firm, unless the other members of the firm participated in the contract or ratified it.

3. **County Funds.**—A county can only be bound in the manner prescribed by law —that is, by act of the Commissioners Court or of an authorized agent.

4. **Same.**—The court properly excluded testimony offered to offset a claim for money realized upon sale of county bonds, that the defendant at instance of the county judge had advanced funds to pay workmen, etc., upon the court house, for erection of which the bonds were issued. The county judge has no power to dispense with the statute in the establishment of claims and disbursement of county funds.

APPEAL from Nolan. Tried below before Hon. Wm. Kennedy.

The opinion states the case.

*J. B. Scarborough* and *E. A. Chaffee,* for appellant. — 1. By law every member of an ordinary partnership is the agent of the firm for the transaction of its business, and the firm is bound by the acts of its members in dealing with innocent third parties who act in good faith without any knowledge of restrictions by the firm and who deal upon the credit of the firm and in the firm, so long as the partner acts within the apparent limits of his authority. 29 Texas, 97; 2 Lind. on Part., 325-7; Story on Ag., secs. 73, 75, 82, 83, 468; 2 Kent's Com., 842; Paley on Ag., secs. 187, 189, 199; 1 Wait's Act. and Def., 562; 5 Wait's Act. and Def., secs. 1, 2, 3; 4 Barb., 373; 1 Hill, 501; 23 Wend., 267.

2. The acknowledgment of one partner during the continuance of the partnership of a debt as due by the partnership will amount to a promise

binding on the firm.    Burnley v. Rice, 18 Texas, 481; Story on Part., sec. 107.

3.   A county is not bound by the action of any one except the Commissioners Court or that of a duly authorized agent.   Defendant Simpson seeks to defend on the ground of merchandise and moneys advanced to one J. M. Archer, the contractor who was building for plaintiff a court house.   Simpson shows no authority from the court nor any duly authorized agent for the advancement of said moneys and goods to Archer.   Rev. Stats., arts. 684, 1511, 1514.

*Cowan & Fisher,* for appellees. — 1.   In the sale of said bonds upon commission defendant Simpson did not act within the scope of authority conferred by the nature of the business of W. B. Simpson & Co.  1 Lind. on Part., secs. 236, 237; Davis v. Blackwell, 5 Bradw., 32; Goodman v. White, 25 Miss., 163; Hotchins v. Kent, 8 Mich., 526; Clayton v. Hardy, 27 Mo., 536; Willis v. March, 30 N. Y., 334.

2.   When a person deals with one of the partners of a firm in a matter not within the scope of the partnership the intendment of the law will be that he deals with him on his own private account; and when a person takes a partnership engagement without the consent or authority of the firm for a matter which has no reference to the business of the firm, and is not within the scope of its authority or its regular course of dealing, the transaction will not be obligatory upon the firm, and no subsequent act of such partner done in the firm name without the consent of his partners can make such transactions obligatory upon the firm.   Goode v. McCartney, 10 Texas, 196; Davis v. Blackwell, 5 Bradw., 32.

HENRY, ASSOCIATE JUSTICE.—The county of Nolan instituted this suit against W. B. Simpson & Co., a firm composed of W. B. Simpson, J. B. Coleman, and R. L. Dunman, to recover twenty-nine hundred less eighty-seven dollars.

The firm of W. B. Simpson & Co. were engaged in doing a general mercantile and a limited exchange business in Nolan County.

The county of Nolan was engaged in constructing a court house, and for that purpose had issued its bonds in sums of one thousand dollars each, which it desired to negotiate for money.

The business of W. B. Simpson & Co. was conducted exclusively by W. B. Simpson.

The Commissioners Court authorized the firm of W. B. Simpson & Co. to sell for cash three of said bonds, and placed them in the hands of W. B. Simpson for that purpose.

A report was made to said court in the name of W. B. Simpson & Co. that the three bonds had been sold for twenty-nine hundred dollars.

The bonds were in fact sold in the name of W. B. Simpson & Co., and

the money was placed to the credit of that firm in a bank in the city of St. Louis, and subsequently paid out by said bank on checks drawn in the name of said firm.

Eighty-seven dollars was allowed by the county as commissions for negotiating the bonds, which W. B. Simpson testified he appropriated to his own use, claiming that his partners had no interest in the transaction.

After the bonds had been directed by the court to be negotiated through W. B. Simpson & Co., and had been delivered for that purpose to W. B. Simpson, and before they had been· negotiated, the laborers upon the court house quit work because they were not being paid, when W. B. Simpson, at the request of the county judge, and to keep the work from stopping, paid the laborers up to the full amount of the proceeds of said bonds, less his commissions and three small items, upon the promise of the county judge that he would be allowed to retain such expenditures out of the proceeds of the bonds wnen they were negotiated.

The Commissioners Court refused to ratify this transaction and demanded that the firm of W. B. Simpson & Co. pay into the county treasury the twenty-nine hundred dollars for which the bonds had been sold, less the sum of eighty-seven dollars allowed as commissions for selling them.

Neither of the partners of W. B. Simpson are shown to have had anything to do with or any actual knowledge of the transaction, and they claim that the transaction of negotiating the bonds·was not within the scope of the partnership business. W. B. Simpson testified on the trial that it was not a firm but his individual transaction.

There was a verdict and a judgment in favor of the county against Simpson and in favor of Coleman and Dunman against the county, from which the county appeals and Simpson assigns errors.

Defendants attached to their answer and pleaded as an offset a bill of particulars of disbursement of the proceeds of the bonds for labor and material used in constructing the county court house, less eighty-seven dollars commissions and less three items amounting to twenty-four dollars, the price of blankets furnished the county jail. The verdict against Simpson was for twenty-seven hundred and eighty-nine dollars.

The county complains of the following charge:

"If you believe as a fact from the evidence that the partnership of W. B. Simpson & Co. was not engaged in the selling of bonds, and that the action of W. B. Simpson was not within the scope of the partnership business, then the members of the firm who did not participate in or ratify the act would not be bound, no matter how sincerely or strongly the plaintiff believed that such act was within the scope of the partnership business."

We find nothing in the record indicating that the partners of W. B. Simpson ever in any manner gave the county ground to believe that the

sale of the bonds was within the scope of the partnership business, or that they had knowledge of, participated in, or ratified the transaction. The fact that W. B. Simpson was a member of the firm did not prevent his undertaking to transact the business as an individual. The fact that he, without authority or knowledge of his partners, wrongfully conducted the transaction in the partnership name did not bind his partners, nor did the fact that the county, without the fault of the partners of Simpson, believed that it was contracting with the firm and not with Simpson personally in a matter that was without the scope of the partnership business bind the firm. The charge states the law of the case correctly.

Coleman, one of the partners, testified that he "knew that B. L. Dunman (the other partner) did not authorize Simpson to make the contract with the county, as he (Dunman) knew nothing about the business and had nothing to do with it."

The admission of this evidence is assigned as error. We think the real question is as to its weight and not its admissibility, and the court did not err in refusing to exclude it.

Plaintiff requested and the court refused to give a charge in effect that if in the transaction Simpson acted within the apparent limits of his authority as a partner, and the county acted in good faith without notice of restrictions upon him, the firm would be bound.

We recognize the correctness of the proposition contained in the charge in cases to which it applies, but find nothing in the facts of this case justifying its being given.

The defendant Simpson offered but was not allowed to prove that by the request of the county judge of Nolan County he had disbursed the proceeds of the bonds sold by him to divers persons, as shown by a bill of particulars attached to his answer, in payment for work and material used in the construction of a court house for said county, that being the purpose for which the bonds were issued and sold; that the money was advanced and disbursed before the bonds were sold to prevent a discontinuance of the construction of the building, which otherwise would have occurred, and upon the promise of the county judge that the amounts so advanced and paid by him would be allowed him by the county in settlement of the bond transaction. He proposed to prove that his account for such disbursements had been presented for allowance to the Commissioners Court of said county and refused.

The court refused to admit the evidence, and we think it was properly excluded.

The method of administering the finances of counties is fully provided for by chapter 1, title 24, of our Revised Statutes.

Article 994 provides that "it shall be the duty of the county treasurer to receive all moneys belonging to the county from whatever source they may be derived, and to pay and apply the same as required by law in

such manner as the Commissioners Court of his county may require and direct."

Other provisions of the statutes direct the registration of all claims against counties, provide for their classification and for the order in which and fund out of which they shall be paid, and forbid their payment until registered or otherwise than in the manner provided by law.

The county judge had not the slightest authority to dispense with any of the requirements of the law, or to bind the county except in pursuance of its provisions.

The claims paid by the defendant, if assigned to him, could have been presented against the county and proceeded with as the law directs, and if just claims might have been enforced in the due course of the administration of the finances of the county, or by suit under circumstances authorized by the statute. Rev. Stats., art. 677.

The money of the county in the hands of the defendant could not, however, be either retained by the defendant while such suit was pending, or be applied to the payment of his debt, but should have been paid to the treasurer of the county, without reference to his being a creditor of the county. Colorado Co. v. Beethe, 44 Texas, 447; San Patricio Co. v. McClane, 44 Texas, 397.

The judgment is affirmed.

*Affirmed.*

Delivered June 4, 1889.