WHITE v. CALAWAY, County Judge, et al.*
(No. 11599.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 30, 1926. Rehearing Denied Feb. 27, 1926.)

1. Evidence ⬤➔65, 83(4)—In absence of contrary showing, court will presume that commissioners' court and other fiscal officers of county know and apply all statutes relating to county's revenue (Rev. St. 1925, art. 1607).

In absence of contrary showing, Court of Civil Appeals will presume that commissioners' court and other fiscal officers of county know and apply statutes which relate to county's revenue from different sources, including Rev. St. 1925, art. 1607, requiring keeping of finance ledger.

2. Counties ⬤➔207(1).

Holder of claim against county cannot lawfully demand its payment prior to its registration, in view of Rev. St. 1925, arts. 1625–1630.

3. Mandamus ⬤➔176—Petitioner for mandamus to compel payment by county commissioners' court of claim, neither classified nor registered, granted such relief under general prayer as record entitles him to (Rev. St. 1925, arts. 1625–1630).

While mandamus cannot be granted to compel payment by county commissioners' court of claim against county, neither classified nor registered, under Rev. St. 1925, arts. 1625–1630, such relief may be granted under general prayer as record entitles petitioner to.

4. Mandamus ⬤➔102(1)—Petitioner having valid judgment against county was entitled to mandamus to compel commissioners' court to direct clerk to issue warrant for payment of claim (Rev. St. 1925, arts. 1625–1630).

Petitioner having valid judgment against county was entitled to mandamus to compel commissioners' court to direct clerk to issue warrant for payment of judgment, interest, and costs, in view of Rev. St. 1925, arts. 1625–1630.

5. Counties ⬤➔168(3)—On issuance of warrant and its presentation to county treasurer, petitioner was entitled to have warrant registered and paid in order in which it was registered (Rev. St. 1925, arts. 1625–1630).

On issuance of warrant and its presentation to county treasurer, petitioner was entitled to have warrant registered and paid in the order in which it was registered, in view of Rev. St. 1925, arts. 1625–1630.

6. Counties ⬤➔225—Judgment against county for damages arising from county's taking of strip of petitioner's land for public road was payable at least out of third class or general county fund (Rev. St. 1925, arts. 1626, 1628).

Judgment against county for damages arising from county's taking of a strip of petitioner's land for public road was payable at least out of the third class or general county fund, within Rev. St. 1925, art. 1626, if not out of the second class, within article 1628.

7. Counties ⬤➔204(1)—Commissioners' court may not, by unauthorized classification or otherwise, defeat payment of just claims against county when, by exercise of their powers and utilization of their revenues, they may be paid (Rev. St. 1925, arts. 1625–1630).

Commissioners' court may not, by any unauthorized classification of a claim, within Rev. St. 1925, arts. 1625–1630, or otherwise, defeat payment of just claims against county when, by exercise of all their powers and utilization of their revenues, such claims may be paid.

Appeal from District Court, Montague County; Vincent Stine, Judge.

Mandamus by W. L. White against H. S. Calaway, as County Judge, and others. From an adverse judgment, plaintiff appeals. Reversed and remanded, with directions.

Benson & Benson, of Bowie, for appellant.
T. H. Yarbrough, of Montague, for appellees.

CONNER, C. J. This appeal is from a judgment of the district court of Montague county rendered on the 16th day of October, 1925, denying appellant's application for a writ of mandamus, directed to H. S. Calaway, county judge, and W. H. Lanan, W. E. Ditto, C. D. Bennett, and George Dill, county commissioners, commanding them as such officers to "immediately pay" to applicant a certain judgment in his favor against Montague county, in the sum of $500, with interest and cost.

The case in variant forms has been before us several times. First, on appeal of Montague county from the judgment in question which was affirmed and writ of error dismissed. See 241 S. W. 744. Second, on motion of Montague county to dismiss an appeal from an order granting a previous application for a writ of mandamus, which motion we overruled. See 250 S. W. 736. Third, on consideration of the sufficiency of the application for mandamus upon which the order therefor had been granted as last above stated, we held that the application did not sustain the order granting the writ, in that it failed to show that the judgment sought to be enforced had become final by the issuance of the mandate of this court, and hence the order was set aside, and the cause reversed. See 260 S. W. 907.

Upon the reversal of the cause, as last above stated, the appellant, White, filed an

---

⬤➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused April 28, 1926.

(282 S.W.)

amended application, showing the finality of his judgment, and its sufficiency, as also the action of the court in denying the prayer thereof, which is now submitted to us for consideration and determination. The application, after setting forth necessary formal allegations and the history of appellant's judgment, alleges that after repeated requests that:

"By reasons of said judgment having become final, this said plaintiff is entitled to receive payment thereof in the total sum of five hundred ($500.00) dollars, together with interest thereon out of the fund of special road district No. 3 of Montague county, Texas, if any there is, and also out of the general fund of Montague county, Texas, provided there is not a sufficient fund in special road district No. 3 to pay the same; that, in addition to the payment of the principal and interest above set out, this plaintiff has paid the sum of twenty-nine and 65/100 ($29.65) dollars, costs, which said plaintiff is entitled to recover from said Montague county, Texas. * * *

"Defendants hereinabove named, acting individually and for the defendant Montague county, as its duly and legally constituted board of commissioners, have failed and refused and still refuse to pay such judgment or any part thereof, though this plaintiff has repeatedly requested the payment thereof, and the entire general funds belonging to said Montague county are liable therefor, and said defendants and each of them, acting individually and collectively as the commissioners' court of Montague county still refuse to pay such amount or any part thereof, and will not pay the same unless required to do so by a most gracious writ of mandamus issued by this honorable court."

The prayer is as follows:

"Wherefore, premises considered, plaintiff prays the court that the defendants W. E. Ditto, C. D. Bennett, and George Dill be cited to appear and answer herein, and that, upon hearing of this application, these defendants be ordered by this court's writ of mandamus to immediately pay to this said plaintiff the sum of five hundred ($500.00) dollars due him as principal by and under the terms of the judgment hereinabove set out, together with legal interest thereon from the date of said judgment and the payment of all costs in cause No. 5697 heretofore paid out by this plaintiff, and that said defendants be required to pay all costs expended and incurred in this said cause, and for such other and further relief, general and special, as to the court may seem just, right, and proper, and for all of which he will in duty bound forever pray."

The defendant county pleaded several exceptions to the plaintiff's petition, but inasmuch as the record fails to show that they were acted on we need not notice them. To the merits, however, the defendants answered by a general denial, and specially to the effect that:

"There is not sufficient funds or revenue on hand owned or controlled by Montague county, Texas, after the payment of necessary current operating expenses of the county government to pay all or any part of said judgment."

The case was submitted to the court, a jury being waived, at a special term on October 16, 1925, and determined in favor of the defendant county, and plaintiff, White, has appealed, as already stated.

[1] The sources of a county's revenue from taxes, general and special, fines, forfeitures, sales, etc., are defined in numerous statutes and legislative acts to which we need not refer. We deem it sufficient to here state that it must be presumed, in the absence of a contrary showing, that the commissioners' court and other fiscal officers of a county know and apply all such statutes, and that, as will be seen by reference to title 34, vol. 1, of the Revised Statutes of 1925, relating to county finance, each commissioners' court is required to procure a well-bound ledger and index, to be known as the finance ledger, and cause to be entered therein a full and orderly statement of the condition of the county finances. It is made the duty of the clerk to open and keep in said book an account with each officer of the county, district, or state, who may be authorized or required by law to receive or collect all money or other property for the use of or belonging to the county, and keep such other accounts as may be necessary to show the financial condition of the county. See Rev. Stats. 1925, art. 1607.

The following articles of the title referred to read as follows:

"Each county treasurer shall keep a well-bound book in which he shall register all claims against his county in the order of presentation, and if more than one is presented at the same time he shall register them in the order of their date. He shall pay no such claim or any part thereof, nor shall the same, or any part thereof, be received by any officer in payment of any indebtedness to the county, until it has been duly registered in accordance with the provisions of this title. All claims in each class shall be paid in the order in which they are registered." Article 1625.

"Claims against a county shall be registered in three classes, as follows:

"1. All jury scrip and scrip issued for feeding jurors.

"2. All scrip issued under the provisions of the road law or for work done on roads and bridges.

"3. All the general indebtedness of the county, including feeding and guarding prisoners, and paupers' claims." Article 1626.

"Said treasurer shall enter each claim in the register, stating the class to which it belongs, the name of the payee, the amount, the date of the claim, the date of registration, the number of such claim, by what authority issued, and for what service the same was issued, and shall write on the face of the claim its registration number, the word, 'registered,' the date of such registration, and shall sign his name officially thereto." Article 1627.

"The funds received by the county treasurer shall be classed as follows, and shall be appropriated, respectively, to the payment of all

claims registered in the first, second and third classes:

"1. All jury fees, all money received from the sale of estrays, and all occupation taxes.

"2. All money received under any of the provisions of the road and bridge law, including the penalties recovered from railroads for failing to repair crossings, and all fines and forfeitures.

"3. All money received, not otherwise appropriated herein or by the commissioners' court." Article 1628.

"The commissioners' court may cause such other accounts to be kept, creating other classes of funds, as it may deem proper, and require the scrip to be issued against the same and registered accordingly." Article 1629.

"The commissioners' court by an order to that effect may transfer the money in hand from one fund to another, as it may deem necessary and proper, except that the funds which belong to class first shall never be diverted from the payment of the claims registered in class first, unless there is an excess of such funds." Article 1630.

[2, 3] It will be observed that under article 1625 the treasurer, by whom all payments are made, is, in express terms, forbidden to pay any claim against a county until it has been duly registered. Under like statutes previously in force, it has uniformly been held that a holder of a claim cannot lawfully demand its payment prior to its registration. Nolan County v. Simpson, 11 S. W. 1098, 74 Tex. 218; San Patricio County v. McClane, 44 Tex. 392; Colorado County v. Beethe, 44 Tex. 447. We hence are not at liberty to grant appellant's specific prayer for "immediate payment" of his claim, inasmuch as it affirmatively appears that appellant's claim has neither been classified nor registered, as required by the above articles of the statutes, nor has the treasurer been made a party to the proceeding. We have concluded, however, that under appellant's general prayer we may grant him such relief as the record discloses he is entitled to.

[4] The record shows without dispute that appellant is the owner of a valid judgment against Montague county, secured by him on the 13th day of January, 1921; that the judgment is final, subsisting, and unpaid, and that the commissioners' court of the county has more than once refused to recognize the claim by classifying it and issuing to appellant the proper warrant on the treasurer for its payment.

In the case of Kaufman County v. Gaston, 273 S. W. 273, by the Waco Court of Civil Appeals, the following is said:

"Where the commissioners' court has refused to have the clerk issue a warrant in payment of a judgment or claim which has been established or approved against the county, a writ of mandamus will lie to compel them to issue said warrant, since it is a ministerial act which they are required to perform, and which must be done before the county treasurer is authorized to register or pay the warrant. Denman v. Coffee, 42 Tex. Civ. App. 78, 91 S.

W. 800; Brown v. Ruse, 69 Tex. 589, 7 S. W. 489; Cobb & Gregory v. Parker County (Tex. Com. App.) 236 S. W. 1108."

[5, 6] The statement there made is supported by authorities, and we think there can be no doubt under the circumstances of this case but that the appellant was entitled to have the commissioners' court direct the clerk to issue a warrant for the payment of his claim. That claim consisted of the judgment, its interest, and costs adjudged in his favor. Upon this issuance of the warrant and its presentation to the treasurer, the appellant was entitled to have the warrant registered and have the same paid in the order in which it was registered, as provided by article 1625 above. See Clark & Courts v. San Jacinto County, 45 S. W. 315, 18 Tex. Civ. App. 204. The right to secure such payment is not affected, we think, by the fact pleaded in defense and upon evidence in behalf of appellee county that there was not sufficient money in the general fund of the county to pay the debt and to meet other necessary running expenses of the county. The county treasurer testified:

"I know now how much money I have in the general fund at this time. I have $1,183.67, after the payment of all warrants that have been registered by me. That revenue comes from taxes. They start to paying the taxes for this year on October 1st."

In the first place, it is not clear to us that appellant's claim is necessarily to be classified and paid out of the third class fund, as specified in article 1626. By reference to 241 S. W. 741, it will be seen that appellant's judgment is founded upon a claim of damages caused by the county taking from him a strip of land 15 feet wide and 182 varas long, which had been appropriated by the county in widening a public road. Article 1628, supra, provides, among other things, that:

"All money received under any of the provisions of the road and bridge law, including the penalties recovered from railroads for failing to repair crossings, and all fines and forfeitures," constitutes the second class.

And that:

"All money received, not otherwise appropriated herein or by the commissioners' court," constitutes the third class.

[7] In the development of the case below it was not shown, as we interpret the statement of facts, that there was no surplus fund in the second class, and no reason presents itself to us why a commissioners' court in an exercise of its lawful discretion might not classify appellant's claim as of the second class and order its payment out of that fund if there should be sufficient on hand to pay it. But at all events appellant's claim, if not otherwise classified, may be paid out of the third class or general fund. In the ef-

fort to show that Montague county did not and would not have the money to pay appellant's claim or any part thereof, one of the commissioners testified that:

"In taking care of the county's property we' have contracted out of this year's fund for a new building on the county farm, at a figure of about $1,800. That account will become due and payable as soon as the building is turned over to us. I think that will be in about a month or six weeks, during 1925. There is not any surplus on hand in the general fund over and above what is reasonably necessary for operating the county's business. There will not be enough."

One of the commissioners also testified that in fixing the "rate" of taxation they had gone as far as the law permitted, but there is nothing in the record to indicate the valuation fixed upon taxable property of the county, and we cannot say, in the present state of the record, that within the rate of taxation permitted under the Constitution and statutes, and with assessments of property as also provided by law, that the commissioners' court may not, from all sources of revenue, secure ample funds to discharge its just obligations and pay all running expenses of the county. The testimony of the treasurer tends to show that, when an indebtedness has been incurred for which there is no money in the fund out of which it should be paid, the custom of the county has been to borrow the money and repay it out of the next moneys collected from taxation. The commissioners' court may not, we think, by any unauthorized classification or otherwise defeat the payment of just claims' when by an exercise of all of their powers and utilization of all their revenues such claims may be paid. See Clark & Courts v. San Jacinto County, supra.

We conclude that the judgment below must be reversed, and the cause remanded, with instructions to the defendant county judge and commissioners to issue a warrant for appellant's claim to the end that it may be duly and properly registered by the treasurer.