# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00430-CV

State of Texas, Appellant

v.

Fidelity and Deposit Company of Maryland and Colonial American
Casualty and Surety Company, Appellees

FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 01-369C368, HONORABLE BURT CARNES, JUDGE PRESIDING

## O P I N I O N

In this case, we must decide whether the sovereign immunity doctrine bars appellees,[1]

sureties on a performance bond furnished to a construction company that entered into a contract with

the Texas Department of Transportation, from filing a counterclaim against the State when the State

initiated suit against the sureties on the underlying bond. After Sedona Contracting, Inc., the

construction company, agreed to construct a research and technology center for the Department, it

defaulted on the contract. The Department terminated Sedona as the contractor on the project and

---

[1] Because their interests do not diverge, we refer to appellees, Fidelity and Deposit Company of Maryland, and Colonial American Casualty and Surety Company, collectively as "Fidelity."

made demand on Fidelity to perform under its bond. The State brought suit against Fidelity alleging that it failed to perform its obligations under the performance bond. Fidelity counterclaimed against the State alleging that it was entitled to additional costs under the original construction contract and the subsequent "Takeover Agreement." The State filed a plea to the jurisdiction asserting that it was protected from Fidelity's counterclaims (i) by sovereign immunity from suit and (ii) because Fidelity had failed to exhaust its administrative remedies. The district court denied the State's plea. The State brings this interlocutory appeal challenging the district court's order denying its plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2004). For the reasons that follow, we affirm the district court's denial of the State's plea to the jurisdiction.

## BACKGROUND

In 1999, Sedona entered into a contract with the State of Texas to build a research and technology center for the Department of Transportation. The contract required Sedona to execute a performance bond in the full amount of the contract price, $11,020,000. Fidelity furnished the performance bond for the project, thereby acting as surety on the contract. Sedona began work on the contract in 1999 but defaulted in July 2000. The Department informed Fidelity that Sedona had defaulted on the contract and made a demand on Fidelity to perform under its bond. Fidelity entered into a "Takeover Agreement" with the Department under by Fidelity agreed to undertake the completion of the original contract. Pursuant to the agreement, Fidelity subcontracted the work to Faulkner Construction.

In April 2001, Fidelity notified the Department that it intended to file a claim for an increase of the contract price based upon "excessive costs and expenses" it had incurred after

2

Sedona's default on the construction contract. The Department responded by providing Fidelity

information about its administrative dispute-resolution procedures. Specifically, the Department

directed Fidelity to file any claim with the Department's Contract Claim Committee. The

Department further informed Fidelity that in the event Fidelity was not satisfied with the

Committee's decision, it could appeal by filing a petition for a formal administrative hearing within

twenty days of the Committee's decision. In September 2001, Fidelity filed the first two of several

claims with the Committee. In January 2003, the Committee offered Fidelity $200,000 over the

contract price.[2] Fidelity requested further discussion of its claim and a twenty-day extension of its

appeal period. The Committee denied Fidelity's request for further consideration but granted its

request for the twenty-day extension. Fidelity did not request a formal administrative hearing.

Meanwhile, in July 2001, the State filed suit against Fidelity in district court claiming

that it had failed to fully perform under its performance bond, causing the State to incur damages.

Fidelity counterclaimed against the State in November, asserting that the Department had caused it

to incur damages by failing to meet its obligations under the original construction contract and the

subsequent takeover agreement, the same claims it had asserted before the Contract Claim

Committee. The State filed a plea to the jurisdiction seeking dismissal of Fidelity's counterclaims.

The State asserted that it was protected from Fidelity's counterclaims by sovereign immunity and

Fidelity's failure to exhaust its administrative remedies. Fidelity argued that the State waived

---

[2] There is disagreement among the parties as to whether the Committee's offer of an additional $200,000 was a "decision," triggering appeal deadlines, or simply a settlement "offer."

3

sovereign immunity by initiating the litigation. It further contended that it was not required to exhaust its administrative remedies because its construction contract was not covered by the statute that prescribes administrative remedies in the highway construction context, and, in the alternative, that the State waived the exhaustion requirement by initiating suit.

## ANALYSIS

### *Standard of Review*

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *See id.*

Because subject-matter jurisdiction presents a question of law, we review the district court's decision *de novo. Id.* In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," look to the pleader's intent, and accept the pleadings' factual allegations as true. *Texas Ass'n of Bus.*, 852 S.W.2d at 443.

4

***Sovereign Immunity***

In its first issue, the State asserts that the district court erred in denying its plea to the jurisdiction because it is protected from suit by sovereign immunity. Fidelity argues that the State waived its immunity against Fidelity's counterclaims by initiating suit. Citing *Texas Department of Transportation v. Jones Bros. Dirt & Paving Contractors, Inc.*, 92 S.W.3d 477 (Tex. 2002) and *General Services Commission v. Little-Tex Insulation Co.*, 39 S.W.3d 591 (Tex. 2001), the State responds that, in the absence of legislative consent, sovereign immunity forecloses suit against the State and the State's sovereign immunity is not waived by the State's filing of suit.

It has long been recognized that, absent legislative consent, sovereign immunity protects the State from lawsuits for money damages. *See, e.g.*, *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). The term "sovereign immunity" includes two principles: immunity from suit and immunity from liability. *Id.* Immunity from suit bars a suit against the State, even if the State acknowledges liability for the asserted claim, unless the legislature has given consent to sue. *Id.* Immunity from liability provides that, even if the legislature has given consent to sue, the State is protected from money judgments. *Id.* When the State enters into a contract with a private entity, it gives up its immunity from liability; however, "[t]he act of contracting does not waive the State's immunity from suit." *Id.* at 408.

Although it is clear that the act of contracting does not waive the State's immunity from suit, a footnote in the seminal *Federal Sign* case raised the specter that there may be circumstances in which the State could waive its sovereign immunity from suit by its "conduct." *See id.* at 438 n.1. The oft-cited footnote led this Court and other Texas courts to find waiver-by-conduct

5

under a variety of circumstances. *See, e.g.*, *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 998 S.W.2d 898 (Tex. App.—Austin 1999), *rev'd*, 74 S.W.3d 849, 857 (Tex. 2002); *Aer-Aerotron, Inc. v. Texas Dep't of Transp.*, 997 S.W.2d 687 (Tex. App.—Austin 1999), *rev'd*, 39 S.W.3d 220 (Tex. 2001); *Little-Tex Insulation Co. v. General Servs. Comm'n*, 997 S.W.2d 358 (Tex. App.—Austin 1999), *rev'd*, 39 S.W.3d 591 (Tex. 2001); *Texas S. Univ. v. Araserve Campus Dining Servs. of Texas, Inc.*, 981 S.W.2d 929 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Alamo Cmty. Coll. Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 749 (Tex. App.—San Antonio 1998, pet. denied). However, in response to the chorus of waiver-by-conduct cases, the Texas Supreme Court declined to find any instances in which the State had waived its immunity by its own acts, and rejoined that "[w]e again reaffirm that it is the Legislature's sole province to waive or abrogate sovereign immunity." *IT-Davy*, 74 S.W.3d at 857; *see also Aer-Aerotron, Inc.*, 997 S.W.2d 687; *Little-Tex Insulation Co.*, 39 S.W.3d 591.

We acknowledge and reaffirm that it is the legislature's sole province to waive or abrogate sovereign immunity. But just as Texas courts have adhered to this general rule for over a century, they have also recognized an exception to this rule—when the State initiates suit. It is well established that the State's initiation of suit is an exception to sovereign immunity from suit clearly recognized by Texas courts.

This exception has been recognized in a variety of procedural postures. In *Anderson, Clayton & Co. v. State*, 62 S.W.2d 107 (Tex. 1933), the State sued seeking a temporary injunction to restrain the defendant from operating trucks over the highways of Texas for compensation without obtaining permits from the Railroad Commission. Anderson, Clayton counterclaimed against the

6

State, seeking a restraining order to enjoin the Railroad Commission from arresting and prosecuting its drivers. *See id.* The court determined: "[w]here a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy." *See id.* at 110. The court recognized that fundamental justice required that "[w]hen the State invokes the jurisdiction of one of its own courts it does so not as a sovereign, but as any other litigant." *See id.*

The Supreme Court later endorsed—and distinguished—the rule applied in *Anderson, Clayton* in *State v. Humble Oil & Refining Co.*, 169 S.W.2d 707 (Tex. 1943). In *Humble Oil*, the State filed suit against Humble Oil to recover taxes owed, plus interest and penalties. *See id.* Humble Oil filed a claim against the State for recovery of sums paid for prior years, seeking to offset its claim for overpayment against the State's claims. *See id.* Finding "no fault" with the rule announced in *Anderson, Clayton* "when applied in a proper case," the court found it to have "no application in this suit" because one claim had "no connection with the other, and the two claims are entirely independent of each other." *Id.* at 709-10.

This Court has had occasion to address the State's waiver of immunity by its initiation of suit in *State v. Martin*, 347 S.W.2d 809 (Tex. Civ. App.—Austin 1961, writ ref'd). In that case, the State sued for specific performance of a contract for sale of an oil and gas lease. Martin counterclaimed for the return of money that he had paid the State under the contract. *Id.* We held that, when the State initiates suit, it has waived its sovereign immunity against counterclaims that are directly related to the State's suit: "The State, not appellee, brought this suit. Appellee's right

7

to defend such suit included the right to cross-claim and obtain affirmative judgment on such claim where the claim so asserted is *incident to, connected with, arises out of, or is germane* to the suit or controversy brought by the State." *Id.* at 814 (emphasis added).

Most recently, in *IT-Davy*, four justices recognized in a concurring opinion by Justice Hecht that at least this one exception survived: "As one example, it has long been held that the State can waive immunity by filing suit." *IT-Davy*, 74 S.W.3d at 861.[3] Similarly in *Travis Co. v. Pelzel & Associates, Inc.*, 77 S.W.3d 246 (Tex. 2002), the supreme court analyzed a series of cases interpreting whether a particular statute contained a waiver of sovereign immunity. The court observed that in one of these cases, "sovereign immunity was not at issue because the county brought suit." *Id.* at 250 (citing *Nolan v. Simpson*, 11 S.W. 1098, 1099 (Tex. 1889)). We conclude that when the State brings suit, it waives its immunity from suit for any counterclaims that are "incident to, connected with, arise[] out of, or [are] germane" to the State's suit. *See Martin*, 347 S.W.2d at 814.

The State further argues that even if it waives immunity by filing suit, in this particular case, Fidelity cannot bring its counterclaims because its claims arise from its role as the completing contractor under the takeover agreement, and the State is suing Fidelity as a surety under the performance bond between Sedona and Fidelity. In essence, the State is arguing that it is suing Fidelity as a surety but Fidelity is counterclaiming as a completing contractor; thus, Fidelity's claims

---

[3] In his concurring opinion, Justice Hecht cited two cases for the proposition that the State can waive immunity by filing suit: *Anderson, Clayton & Co. v. State*, 62 S.W.2d 107 (Tex. 1933) and *Kinnear v. Texas Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex. 2000) (State sued defendant under Texas Fair Housing Act which allowed defendant to counterclaim for attorney's fees).

8

are not "germane to the matter in controversy." *Anderson*, 62 S.W.2d at 110. We find this argument unpersuasive. The State's suit against Fidelity concerns additional costs and expenses the State incurred due to the default of Sedona, the original contractor. Fidelity's counterclaim concerns additional expenses it incurred over the contract price due to the default of Sedona and acts of the State.

In its original and first amended petitions, the State sued Fidelity for breach of contract, and its pleadings alleged: "TxDOT [the Department] has at all times, done and performed all of the stipulations, conditions, and agreements stated in the Contract and Bond to be performed on its part . . . . The Defendants owed a duty and failed to perform pursuant to the terms of the Contract and Bond."[4] Fidelity counterclaimed alleging that the State had improperly terminated Sedona, forcing Fidelity to perform under its bond, and had thereafter breached the terms of the construction contract. Without commenting on the merits of either parties' claims, but based on the face of the pleadings, it is clear that the issues that will arise in Fidelity's counterclaim are germane to the State's suit. If this Court were to conclude that Fidelity could not counterclaim against the State in district court, Fidelity and the State would essentially have to litigate many of the same issues twice, the State in district court and Fidelity through administrative proceedings.

The State urges this Court to sift through the claims of each party and specify which of Fidelity's claims arise from the State's suit. This we cannot do. The supreme court has cautioned

---

[4] The State in its second and third amended petitions altered this language to read: "TxDOT [the Department] has at all times, done and performed all of the stipulations, conditions, and agreements stated in the Performance Bond . . . to be performed on its part . . . . The Defendants owed a duty and failed to perform pursuant to the terms of the Performance Bond." The amendment does not change the nature of the issues in dispute.

against fact-intensive reviews for the very same reasons that the waiver-by-conduct analysis was rejected in *IT-Davy*: "[c]reating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies." *IT-Davy*, 74 S.W.3d at 857. The same concerns pertain to this case. By finding waiver for counterclaims that are germane to the State's suit when the State initiates suit, we recognize the bright line long recognized by Texas courts. If we were to demand Fidelity to first demonstrate that each of its claims is responsive to the State's suit and thereby encourage the State to expend its resources in the same process, we would be allowing the same inefficiencies the supreme court sought to avoid in the waiver-by-conduct context. Because the counterclaims relate to the same core factual and legal issues, we conclude that the State has waived immunity against Fidelity's counterclaims. We overrule the State's first issue.

### *Exhaustion of Administrative Remedies*

In its second issue, the State contends that even if it waived immunity by filing suit in district court, Fidelity may not counterclaim because it has failed to exhaust its administrative remedies. The State argues that section 201.112 of the transportation code prescribes the mandatory administrative process for Fidelity's claims. *See* Tex. Transp. Code Ann. § 201.112 (West Supp. 2004). Fidelity responds that the statute prescribing the administrative process for contractors on highway projects does not apply because Fidelity's contract concerned the construction of a research and technology center, not a highway, and is not covered by the statute. In the alternative, Fidelity urges that the State waived its right to require Fidelity to exhaust when it filed suit.

10

It is well settled that a party must exhaust its administrative remedies before seeking judicial review of an agency decision. *See* Tex. Gov't Code Ann. § 2001.171 (West 2000); *see also Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294-95 (Tex. 2001). A trial court is generally without jurisdiction if a plaintiff fails to exhaust his administrative remedies. *See Essenburg v. Dallas Co.*, 988 S.W.2d 188, 189 (Tex. 1998). The State contends that, because Fidelity has not completed the administrative process, the district court had no jurisdiction to hear its counterclaims. Fidelity counters that it began the administrative process only because it had contracted to do so; it further asserts that it is not statutorily mandated to exhaust administrative channels.

Section 201.112 allows the Department to make rules detailing the administrative process for contract claims that arise under certain chapters of the transportation and government codes. "The commission may by rule establish procedures for the informal resolution of a claim arising out of a contract described by: Section 22.018; Chapter 223; Chapter 361; Chapter 2254, Government Code; or Section 391.091." Tex. Transp. Code Ann. § 201.112. Both parties agree that chapter 223 is the only provision that arguably has application to the contract in the present case. In its rule, the Department specified that contract claims that arise from contracts covered by chapter 223 shall go before the Contract Claim Committee. *See* 43 Tex. Admin. Code § 9.2 (1999). Fidelity contends that it does not have to go through the administrative process outlined in section 9.2 because its contract with the State is not covered by chapter 223.

The question, then, is whether a contract to construct a research and technology center is included within the language of chapter 223. We hold that it is not. Chapter 223 covers contracts

11

for "highway projects." *See* Tex. Transp. Code Ann. ch. 223 (West 1999). Section 221.001 defines "highway" to include "a public road or part of a public road and a bridge, culvert, or other necessary structure related to a public road." Tex. Transp. Code Ann. § 221.001. The State argues that the research and technology center at issue is a "necessary structure related to a public road." Fidelity responds that by listing bridge and culvert in the definition of highway, the "other necessary structure" language is limited to structures that are of the kind delineated in the list—structures akin to bridges and culverts. We agree with Fidelity's interpretation of the statute.

We are guided in our determination by the statutory-construction principle of *ejusdem generis*: "[w]hen words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation." *Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003). Here, because the legislature specifically referred to bridges and culverts in its definition of highway, we conclude that to be a "necessary structure" as intended by the legislature through section 201.112, a structure must be within the same general nature as a bridge or culvert. By any reasonable construction of the language, a research and technology center is not of the same general category as a bridge or culvert. We further note that section 201.112 explicitly names the sections and chapters of the codes to which it applies. *See* Tex. Transp. Code Ann. § 201.112. We infer from the statute's specificity that the legislature intended section 201.112 to apply only to the explicitly named sections and chapters in the statute and the categories specified therein.

The State relies on an attorney general opinion that concludes that the Department has the statutory authority to build structures like the research and technology center. *See* Op. Tex.

12

Att'y Gen. No. S-105 (1953). Although we agree that the Department has the authority to construct buildings such as a research and technology center to perform its statutory mandate, that does not speak to whether the definition of highway set out in section 201.112 includes those structures. When construing statutes, we first look to the plain and common meaning of the words used by the legislature. Tex. Gov't Code Ann. § 311.011 (West 1998); *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000); *Texas Workers' Comp. Comm'n v. Texas Builders Ins. Co.*, 994 S.W.2d 902, 908 (Tex. App.—Austin 1999, pet. denied). Unless a statute is ambiguous, courts abide by the clear language of the statute and enforce it as written. *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985). We hold that section 201.112's definition of highway does not include a research and technology center, and therefore, the construction contract in this case was not covered by chapter 223 of the transportation code. We thus conclude that Fidelity had no mandatory administrative remedy to exhaust.[5] We overrule the State's second issue.

## CONCLUSION

We conclude that when the State initiates a lawsuit for money damages, it waives its immunity from suit against counterclaims that are germane to the lawsuit or controversy. We further conclude that Fidelity had no mandatory administrative remedies to exhaust because its contract to build a research and technology center is not covered by the section of the transportation code that

---

[5] We do not speak to Fidelity's alternative theory that the State waived its right to require Fidelity to exhaust its administrative remedies when it filed suit because we have determined that in this case Fidelity had no statutory administrative remedy to exhaust.

13

prescribes administrative remedies for contract claims. For these reasons, we affirm the district court's order denying the State's plea to the jurisdiction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: January 29, 2004