Rankin & Rankin vs. Childs.

---

RANKIN & RANKIN vs. CHILDS.

| 9 | 673 | 65 |
|---|---|---|
| 52a | 388 | |
| 9 | 666 | |
| 156 | 116 | |

McCourtney applied to Rankin to purchase lumber for building a ferry-boat. Rankin refused to credit him without security. McC. mentioned the name of Childs as security. C. was accepted as sufficient. A few days after, McC. presented a bill of the lumber, *in Childs' handwriting*, at the foot of which was written:

| 9 | 665 |
| 94a | 4522 |
| 94a | 7528 |

"Messrs. Rankins will furnish the above bill as soon as possible, and I will order what I may want for my boat, in a short time. JAMES McCOURTNEY."

"I hereby guarantee the payment of the above bill. January 29, 1842.

WM. CHILDS."

It was also in evidence that the lumber was delivered, and that whilst the boat was being built, Childs was frequently present, as a visitor, but took no part in the matter.

Rankin & Rankin vs. Childs.

Held,

1. That Childs' contract was not a direct promise, but a mere guaranty.

2. Although a man may bind himself to pay the debt of another, yet to do so, his intent must be clear, and he must use apt words for the purpose.

3. It is of no importance that the bill was made out by Childs, and that the guaranty was on the same piece of paper.

4. To make Childs liable, notice should have been given him of the acceptance of his guaranty, and of the failure of McCourtney to pay, after demand made.

5. Such demand should have been made, and notice given in a reasonable time.

6. The notice of the acceptance may be shewn by circumstances, and is a matter for the jury.

7. If the party to whom the credit was given, were insolvent, and the guarantor knew it, no demand need be made.

## APPEAL from Cooper Circuit Court.

PEYTON R. HAYDEN, for Appellants.

1. In the argument of this cause the counsel for appellants will insist that the guarantee of Childs to pay for the building materials which were sawed and furnished by plaintiffs to McCourtney, as therein and thereby specified, was and is a direct unconditional and positive undertaking on his part, and not a collateral or conditional one; and that the plaintiffs, to sustain their action were only bound to prove the making of the guaranty, and the delivery of the materials to McCourtney, mentioned in the bill therefor, as made out by Childs; and that it was not necessary for plaintiffs to prove that they had given Childs notice prior to the commencement of their suit, that they had furnished said materials to McCourtney.

2. That if it were necessary to prove that plaintiffs had given notice to Childs, that they had furnished and delivered to McCourtney said building materials, as mentioned in the bill therefor, and that McCourtney had not paid them therefor, yet the court erred in giving the jury the instruction prayed for by defendant; because the question of notice was a fact for the decision of the jury, and upon which plaintiffs had given evidence, from which the jury might, and ought to have found that fact, if they had been permitted to have decided it.

STUART & MILLER, for Appellee.

The appellee will insist that that evidence in the cause was insufficient to entitle the plaintiffs to a verdict against the defendant Childs, (now sole and surviving defendant,) and who could only have been made responsible to plaintiffs, as the guarantor of his original co-defendant McCourtney.

2. That as the defendant Childs, was only responsible in the capacity of guarantor, and as his offer to guaranty was made prior to the sale and delivery of the lumber by the plaintiffs to McCourtney, it was necessary in order to charge the defendant, Childs, that the plaintiffs should have given him reasonable notice of their acceptance of his guaranty, after it was given, and before the commencement of their suit against him.

3. That in an action against a guarantor, unless his agreement to guaranty be absolute and conclusive, the plaintiff must show that he gave notice to the guarantor, that he accepted it as such, and notice of the amount of the debt, and of non-payment by principal; and as no such notice was proven in this case, the court did not err in its instruction to the jury, and in overruling the plaintiff's motion for a new trial. See 2 Stark. Evidence 371-2; Cond. Repts. 423-5; 5 Mo. Repts. 504; Scott vs. Anthony, 7 Cranch 69; Russell vs. Clark,s Ex'r, 1 Mason's Repts. 323; Cramer vs. Higginson and others; Russell vs. Perkins, 1 Mason 371; 7 Peters 125; Douglass et al. vs. Reynolds et al; 10 Peters 494; 8 Pickering 423; 24 Pickering 250.


McBRIDE, J., delivered the opinion of the court.

This was an action of assumpsit, brought by William and Smith Rankin, against the defendants, Childs & McCourtney, in the Cooper circuit court, at the June term 1843. The declaration contains two counts; the first for joists, plank, and other building materials, sold and delivered to the defendants, for the work and labor of the plaintiffs, done at the request of defendants; for money paid, laid out, and expended; for money had and received, and on an account stated. The second count, and the one upon which the plaintiff mainly sought to recover against the defendant Childs, set forth and alleged that the plaintiffs, at the request of McCourtney, sawed and delivered to him a large quantity of materials for the building of a ferry-boat; and upon the delivery and acceptance of the said materials to the defendant, McCourtney, the said Childs and McCourtney guaranteed the payment of as much money

therefor as they were reasonably worth. The defendants pleaded non-assumpsit.

At the March term 1845, the plaintiffs, having suggested the death of McCourtney, abated their suit as to him, and went to trial against the surviving defendant, Childs. After the plaintiffs had closed their evidence, the defendant by his counsel, moved the court to instruct the jury that the plaintiffs could not recover, and were not entitled to a verdict upon the evidence given in the cause. The court instructed the jury accordingly, whereupon the plaintiffs took a non-suit with leave to move to set the same aside. A motion was made by the plaintiff's attorney, to set aside the non-suit, and grant a new trial, because the court erred in giving the instruction prayed for, which being overruled the plaintiffs excepted, and have brought their case here by appeal, and seek a reversal of the judgment of the circuit court.

The principal question in this case arises on the instruction given to the jury by the court; and whether that instruction be correct or not, depends upon the legal import of the defendant Childs' undertaking. In construing this transaction, as well as all others, it is the duty of the court to ascertain with as much certainty as practicable, what was the intention of the contracting parties, and to give effect to that intention. Whenever parties may legally contract, the law permits them to do so upon their own terms and conditions, and does not assume to make contracts for them. Neither will the courts, when their aid is invoked, undertake to vary the terms and conditions agreed upon between them.

Justice Thompson, in the case of Lee vs. Dick, 10 Peters, 492, says, "A guarantee is a mercantile instrument, and to be construed according to what is fairly to be presumed, to have been the understanding of the parties, without any strict technical nicety."

The evidence shows, that the defendant McCourtney, desiring to build a ferry-boat for his own use, called upon the plaintifis, who were owners of a saw-mill in the vicinity, to purchase lumber for the construction of his boat. The plaintiffs refused to credit him for the lumber, as he was a stranger to them, unless he would give them security for the payment thereof, whereupon McCourtney mentioned the name of his co-defendant Childs, as such security, who plaintiffs said was good: that a few days thereafter McCourtney returned to the plaintiff's saw-mill, and delivered to them a written bill, purporting to be in Child's hand-writing, specifying the building materials, &c., to be sawed and delivered by the plaintiffs to McCourtney at the place of building the boat; at the foot of the bill is the following: "Messrs. Rankins

will furnish the above bill as soon as possible, and I will order what more I may want for my boat in a short time.

JAMES McCOURTNEY.

I hereby guarantee the payment of the above bill.

Jan. 29. 1842.                                            WM. CHILDS."

On the tenth February, the plaintiffs commenced the sawing, and delivery of the materials in the bill, to McCourtney, at the place of building the boat, and continued the delivery up to the 12th May, 1842, when they completed it; that during the delivery of the materials, and the building of the boat, Childs was frequently present as a visitor, taking no control or management in the matter; that during the delivery, McCourtney procured one Allen, (who was the clerk of Childs in his steam-mill, situate near the place of delivery,) to measure the lumber, &c., and keep an account thereof, but there was no evidence given, conducing to show that Childs knew this; that the materials, &c., furnished, when thrown into board measure, were worth two dollars per hundred feet, and that McCourtney agreed to pay that price for the same.

It may be unquestionably assumed from the foregoing facts, that the boat, for the building of which the materials were furnished, was to be built by McCourtney, and for his own use; Childs had no agency in the construction of, or interest in the boat. He acted solely in the transaction as the friend of McCourtney. McCourtney made the contract with the plaintiffs, which was conditional on their part. If McCourtney would give them Childs as security, then, they would furnish him with the materials, delivered on the bank of the river, at two dollars per hundred feet. This must have been the terms of the argreement, as there is no evidence of another interview between the plaintiffs and McCourtney, prior to the making out the bill for the materials. The order at the foot of the bill, signed by McCourtney, goes to show that a previous agreement as to price, and place of delivery, had been made between them.

Although Childs appears to have had no interest in the boat, yet he might bind himself jointly with McCourtney, to pay for the materials furnished, by the use of apt words for that purpose. If he had so intended, is it probable he would have used language which he did for that purpose?

Justice Story says, in 7 Cranch, 90, "that the law will subject a man having no interest in the transaction, to pay the debt of another, only when his undertaking manifests a clear intention to bind himself for the debt." Words of doubtful import, ought not, it is conceived, to re-

ceive that construction. It is the duty of the individual who contracts with one man on the credit of another, not to trust to ambiguous phrases and strained constructions, but to require an explicit and plain declaration of the obligation he is about to assume.

The plaintiff's attorney insists, that the terms used, "I hereby guarantee the payment," &c., are equivalent to saying, "I hereby promise to pay," &c. But we think there is a manifest difference in the force of the language used. The word "*guarantee*," is an undertaking to do an act, or perform a duty for another, in the event of his not performing. Judge Story defines it to be an original collateral undertaking; whereas, the other is a direct, positive and unconditional promise to pay. If Childs had intended to bind himsef jointly as principal in the contract, it is remarkable that he used the language which he did. The use of the word *guarantee*, by Childs, satisfies my mind, that he understood its import, and used it understandingly; that he only intended to bind himself to pay, in the event of the plaintiffs being unable to make the amount out of McCourtney. If Childs intended to become jointly bound by his memorandum at the bottom of the bill, why did he not cause McCourtney to sign with him. It will be seen that McCourtney by his note, does not himself expressly promise to pay for the materials furnished for his own boat, and yet it is said, Childs has unconditionally promised to pay for them.

In Lee v. Dick, 10 Peters, 492, the following note was addressed by the defendant to the plaintff:

"Gentlemen : Nightingale and Dexter, of Maury county, Tennessee, wish to draw on you at six, or eight months date. You will please accept their draft for $2000, and I do hereby guarantee the punctual payment of it. Very respectfully, yr. ob't serv't. SAMUEL B. LEE."

This was held, without any question whatever, to be a guarantee. But substitute the word *promise* for *guarantee*, and no doubt would be entertained of the defendant's direct and positive undertaking, and liability, to pay the $2000 at maturity.

So in the case of Mason v. Pritchard, 2 Camp. 436, where the defendant wrote the plaintiff, "I hereby promise to be responsible to T. M. (*the plaintiff,*) for any goods he hath, or may supply my brother W. P., to the amount of £100," it was *held*, that this was a standing or continuing guarantee to the extent of £100, which might at any time become due for goods supplied, until the credit was recalled. In this case the undertaking was more direct, and unequivocal, than in the case now before us. T here the extent of liability was fixed ; here, there is no specified amount ascertained, or assumed to be paid.

In the case of Marle vs. Wells, 2 Cam. 413, the defendant wrote to the plaintiff, "I have been applied to by my brother W. W. to be bound to you for any debts he may contract, not to exceed 100 pounds (with you) for goods necessary in his business as a jeweller; I have wrote to say by this declaration, I consider myself bound to you for any debt he may contract for his business as a jeweller, not exceeding 100 pounds after this date;" it was held, that the defendant was answerable as guarrantor for any debt not exceeding 100 pounds, which W. W. might, from time to time, contract with the plaintiff in the way of business.

. So likewise in the case of the Oxford Bank vs. Haynes, 8 Peck, 423, where, upon the back of the promissory note made by S. & A. to the plaintiff, was written the words, "I guarantee the payment of the within note," and signed by the defendant; it was held, that he was a guarantor, and not a surety.

And in Dole vs. Young, 24 Peck, 250, the following writing was signed, and addressed to the plaintiff, by the defendant: " Please send W. goods to the amount of $100, and I will guarantee the same in four months," and the plaintiff immediately after the presentation thereof, delivered goods to W. It was held that this was strictly a guarantee of the debt of W., and not an original undertaking on the part of the defendant.

These cases, and many others to be found in the books to the same point, go conclusively, we think, to establish the extent of the defendant Childs' undertaking, and make it a guarantee, an original collateral undertaking, and not an unqualified promise, to pay the debt of his co defendant McCourtney. We are free to admit, however, that there are decisions which militate against the conclusion to which we have come, and some of very high authority; in this conflict we have adopted as the rule of our action, those decisions which appear to us to be most consonant with the principles of justice, and as tending in the most eminent degree, to carry into effect the *bona fide* intention of the contracting parties, at the time of the contract. In ascertaining this intention, we have not confined our investigation to a mere technical construction of the writing signed by the defendant childs, but have taken into consideration all of the attendant circumstances.

It is insisted, however, in argument, that the credit was given by the plaintiffs to Childs, and not to McCourtney, who was a stranger to them; and that therefore Childs is liable as original obligor. In this particular, we cannot distinguish this case from innumerable other cases of guaranties, to be found in the books; and indeed it is in part the object which the guarantor has in view in making the guaranty. If the princi-

pal be sufficiently responsible to obtain the desired credit, upon his own account, there would appear to be no necessity for requiring a guarantee from a third person, having no interest, and deriving no advantage from his undertaking. The fact of a guarantee being given, or required, presupposes a want of credit on the part of the principal, and if the argument be sound to the extent urged, such a relation could scarcely exist between parties. He who undertook, no matter upon what terms, or conditions, if his principal should be irresponsible, to secure the ultimate performance of a contract, would instantly himself be converted into a principal; for, the credit, in whole or in part, would be given upon the responsibility of the guarantor. This would be unreasonable; it would be a harsh rule to apply to one, operated upon by feelings of friendship, and who had, without any pecuniary interest whatever, involved himself for his friend.

It is certainly true, as before remarked, that a man may bind himself to pay the debt of another person, in which he has neither a direct nor a remote pecuniary interest; but in doing so he must not only intend to do it, but he must use appropriate words to bind himself, and the courts will not by a strained construction of his language, subject him to such a penalty. 7 Cranch, 90.

It was also urged in the argument, as a circumstance entitled to consideration, that the bill of materials was made out by childs. We think there is no importance to be attached to that fact, as McCourtney had an equal right to obtain the services of Childs in aiding him to draw up the bill, as the services of any other individual; and Childs thus lending him the benefit of his superior skill, did not subject himself to any legal liability.

Neither do we think that there is any force in the fact, that the guarantee was made upon the same piece of paper, and at the foot of the bill. There being sufficient space for it to be made there, it was equally as convenient so to make it as upon a distinct piece of paper. Wherever made, it would in no wise change the defendant Childs' liability.

If we have correctly determined the nature of Childs' undertaking, then the doctrine is well settled that before he can be made liable, it was the duty of the plaintiffs to give him notice of their acceptance of his guarantee, and the failure of McCourtney to pay for the materials before they can charge him.

In Russell vs. Clark, 7 Cranch. 92, it was distinctly held by the court, that in cases of garanties it is the duty of the plaintiff to give the defendant immediate notice of the extent of his engagement. In 24 Peck, 250, it was decided that in order to maintain an action against

a guarantor, a demand of payment must be made in a reasonable time of the principal, and notice of non-payment given to the guarantor; and if in consequence of the want of such reasonable notice, the guarantor is prevented from getting his indemnity of his principal, or otherwise suffers a loss, he shall be exonerated. The same principle was held in the case before cited from 8 Pick. 423. And the reason of this rule appears obvious, as it may be most material, not only as to the guarantor's own responsibility, but as to future rights and proceedings. It may regulate in a great measure his course of conduct and his exercise of vigilance, in regard to the party in whose favor it is given.

In 10th Peters, 496, the court say "there are many cases where the guarantee is of a specific existing demand by a promissory note or other evidence of debt; and such guarantee is given upon the note itself, or with a reference to it, and recognition. of it when no notice would be necessary. The guarantor in such cases knows precisely what he guarantees and the extent of his responsibility, and any further notice to him would be useless; 14 John, 349; 20 John. 365. But when the guarantee is prospective, and to attach upon future transactions, and the guarantor uninformed whether his guarantee has been accepted and acted upon or not, the fitness and justice of the rule requiring notice, is supported by considerations that are unanswerable."

The case now under consideration comes fully within the letter and spirit of the rule above laid down. The guarantee is prospective, and the amount indefinite. The only pretext of a notice to Childs, that his guaranty had been accepted, is to be found in the fact that he was frequently at the place of building the boat during the time of its being built and the materials delivered. Whether that would constitute a sufficient notice of the acceptance of his guarantee, and that upon the faith thereof the plaintiffs were delivering the materials for the boat, ought to have been left to the jury. But there was no evidence whatever tending to prove a prior demand of payment, and refusal to pay, on the part of McCourtney, and notice of that demand and refusal given in a reasonable time thereafter to Childs. Proof of such notice is absolutely necessary to charge Childs upon his guarantee, unless the plaintiffs can show that McCourtney was insolvent, and that Childs was apprized of that fact, and consequently sustained no injury by reason of their failure to give him such notice.

Judge NAPTON concurring herein, the judgment of the circuit court is affirmed.

43

SCOTT, J., dissenting.

After evidence had been given, conducing to show that the plaintiffs had given the credit to the defendant, the court instructed the jury that upon the evidence the plaintiffs were not entitled to a verdict. I conceive this instruction to be erroneous. Instead of ascertaining whether there was a guaranty or not, and then applying the law to the case, the court took the fact in dispute for granted, and instructed the jury accordingly. Starkie, speaking in relation to this subject, says, "it is always a question for the jury, whether the credit, before the debt was incurred, was given to the defendant or to another as principal, taking into their consideration the amount of the debt, the situation of the parties, and all the other circumstances of the case." This doctrine of the test is amply sustained by the cases referred to in its support; Keate vs. Temple, 1 Bos. & Pul. 158; Darnell vs. Trott, 2 Car. & P. 82. The word "guaranty" is not a technical one. It does not, *ex vi termini*, import that the party who uses it in contracting, intends that his undertaking shall be collateral. If a note is subscribed by which the maker guaranties the payment of a sum of money to another, would any court construe this a collateral undertaking and not an original promise? This cannot be a collateral undertaking, unless there is an original one; and whether he who undertakes to pay for goods furnished to another, makes himself immediately liable, or only collaterally so, is always a question for the jury.

Even if the undertaking of the defendant should be found to be collateral, I should question the justice or propriety of applying the law relative to guaranties to this case under all its circumstances. Rules of law are of a plastic nature, moulding and adapting themselves to the varying circumstances of the transactions of men, so as to do justice amongst them. Chancellor Kent says, that after a valid guaranty has been made, the rights of the parties in the relative character of principal and surety affords an interesting subject of enquiry, and the doctrine of negotiable paper, as to demand and notice, has a feeble and qualified application to the guarantor. The rule, as to notice, is not so strict as in the case of mere negotiable paper, and the neglect to give notice must have produced some loss or prejudice to the guarantor. The case af Paul vs. Tatlock, 1 B. & P., goes to show that notice to the guarantor, from other sources than the guarantee, will have its influence with the courts. In that case A became bound to B for the honesty of C, who afterwards embezzled the money of B. It was held that B might maintain an action on the guaranty, though three years

had elapsed without any notice having been given by B to A of the embezzlement; and although it appeared B had given credit to C for the sum embezzled, if it appear that A was acquainted with the circumstances from any other source, and that the embezzlement was not industriously concealed from him. Under the circumstances of this case, the defence is most unconscionable. It is a mockery to talk about notice when the defendant was fully possessed of all the information the plaintiffs could communicate. The defendant was a miller; and his undertaking itself fully apprized him of the extent of his liability. The case of Wides and others vs. Savage, 1 Story's Rep. 22, shows that cases of this kind depend very much upon their circumstances.

The presumption that the credit was originally given to McCourtney, arising from the fact that both he and the defendant were jointly sued, is very much weakened by the consideration that the statute allows a plaintiff to sue several in assumpsit, and to recover against one or more as they shall be found indebted.