## F. R. DEAN v. THE STATE OF TEXAS.

(Case No. 1301.)

1. TAX COLLECTOR — STATUTE CONSTRUED.— A tax collector, who, under the law, has bid in land sold for taxes to the state, is not entitled under the act of 1876 (p. 259, sec. 30) to retain in his settlement with the comptroller the same commissions, penalties and costs to which he would have been entitled had the land been bid off by an individual. (See secs. 21, 22.)

2. SAME.— When lands bid in at tax sale, for the state, shall have been redeemed by the owner, the previously unpaid fees and costs, and which are included in the price of the redemption, would be held by the state for the benefit of the collector.

3. INTEREST — TAX COLLECTOR.— The state is entitled to interest on such sum of money as a tax collector should pay into the treasury, from date when such payment should have been made.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

[No briefs have reached the reporter.]

BONNER, ASSOCIATE JUSTICE.— There are two controlling questions presented for our decision in this case — *first*, whether F. R. Dean, as tax collector of Galveston county, under proper construction of the statute of 1876 (Laws 15th Leg., 259), in cases in which, in consequence of the want of an individual purchaser at a tax sale, he had bid off land to the state, was, in his settlement with the comptroller of public accounts, authorized to retain as against the state, the same commissions, penalties and costs to which he would have been entitled, had the land been bid in by an individual; *second*, if not, was the state entitled to a judgment in addition to the principal sum thus retained, also, for legal interest thereupon from July 1, 1878, the date when the same should have been paid?

I. Was the collector in his settlement with the comptroller authorized to retain commission, etc., on lands bid off to the state?

The determination of this question depends upon the construction which should be given to the statute.

Section 30 provides that "the collector of taxes shall receive as compensation for his services five per cent. on all amounts collected by him for the state. . . . And in cases where property is levied on and sold for taxes, he shall receive the same compensation as allowed by law to sheriffs and constables for making a levy and sale in similar cases."

The question before us is not whether, in the event the land is bid off by the state, it is such sale as would make the delinquent tax-payer liable to the collector for fees and costs, but whether it was the intention of the legislature that the same should be advanced by the state.

The statute of Missouri, under which *Ex parte* Tate was decided, was more explicit than the one now under consideration.   9 Mo., 668.

It is an admitted principle that no action can be maintained by an individual against the government, either directly or indirectly, by way of set-off, unless by the sanction of express law to that effect.   Borden *v.* Houston, President, 2 Tex., 594; Chevallier *v.* The State, 10 Tex., 315.

Where statutory fees are claimed from the state by her officers, their allowance and payment must have been provided for, to authorize a recovery.

This act of 1876, after providing for the assessment, levy, publication and sale of real estate for taxes, provides:

"Sec. 21. Should the collector of taxes fail to make sale of any real estate for want of a purchaser, he shall bid the same off to the state for taxes and penalties due and costs accruing thereon, and make due return thereof, under such form and direction as the comptroller may furnish and direct, and he shall, on final settlement of his account with the commissioners' court and the comptroller of public accounts, be entitled to a credit for the amount

of taxes due the state and county for which the land or lots were bid off to the state."

" Sec. 22. The collector of taxes shall, whenever he may receive as much as five thousand dollars ($5,000) or more, belonging to the state, pay the same over to the state treasurer in the manner as may be directed by the comptroller of public accounts, reserving only his commissions on the same."

Taking into consideration the terms and objects of the statute, we are of opinion that it did not intend, in the event the land was bid off to the state, that the fees and costs should in the first instance be advanced by the state. This being the construction given to it by the head of the appropriate department, should be entitled to due consideration and weight.

The primary object of the law was to enforce payment of the taxes to carry on the government, the costs were but an incident. It was not the intention of the statute, in having the lands bid off to the state, to make this a means of speculation for the body politic. Although justice requires that in such cases provision should be made to secure the collector in his fees and costs, yet, to hold the state directly chargeable for such contingent indebtedness, would materially impair the resources of the government; disarrange the basis upon which its appropriations are made; and greatly impair the object sought by taxation. It would increase, not discharge, the obligations of the state.

When the lands bid in shall have been redeemed by the owner, the previously unpaid fees and costs, and which are included in the price of this redemption, would be held by the state for the collector. If, however, the lands should not be redeemed by the owner, then it would rest in the wisdom of the legislature to provide some mode of compensation for him. This, if not previously done, was attempted to be provided by a resale for unpaid taxes and costs, by act April 7, 1879, art. 4759 b, appendix, 22.

That delay might be prejudicial to the best interests of the collector, is one of the burdens of this and similar offices where the fees and costs await the collection of the principal debt, which must enter into the consideration of the question whether it should be sought for and accepted.

II. Is the state entitled to interest for the failure to pay the taxes from the date when the same became due?

Upon the authority of adjudicated cases we think this must be answered in the affirmative.

In Burnett v. Henderson, Governor, which was a suit upon the official bond of a tax collector, and in which judgment was rendered for an amount of taxes retained in his hands, and interest thereon, Wheeler, J., said, the liability to pay interest upon the money collected and retained by him, is not now an open question. 21 Tex., 590; Borden v. Houston, President, 2 Tex., 598, 615; Evans v. The State, 36 Tex., 323.

In the case of Cahn v. The State, decided at Austin Term, 1880, of this court, suit had been previously instituted against the collector, Cahn, and the sureties on his official bond, dated in 1870, for an alleged defalcation of an amount exceeding $1,000, which, having been subsequently paid, that suit was dismissed and receipt given. Cahn was then solvent. Some years subsequently, and when he had become insolvent, it was ascertained that a mistake of $2,000 had been made in his settlement, by the comptroller, against the state, for which, and interest thereon from the date when the money should have been paid, judgment below was rendered against Cahn and his sureties, and which on appeal was affirmed. Moore, Ch. J., in delivering the opinion of the court, said that interest was properly allowed in the nature of damages, if not strictly under the terms of the statute.

AFFIRMED.

[Opinion delivered February 8, 1881.]