**STATE of Texas, Appellant,**

v.

**R. H. MARTIN, Appellee.**

**No. 10849.**

Court of Civil Appeals of Texas.

Austin.

June 7, 1961.

Rehearing Denied June 28, 1961.

Will Wilson, Atty. Gen., Ben M. Harrison, J. Milton Richardson, Asst. Attys. Gen., for appellant.

McKay & Avery, Charlie D. Dye, Austin, for appellee.

HUGHES, Justice.

The State of Texas brought this suit against appellee, R. H. Martin, for specific performance of a contract for the sale of an oil and gas lease covering a 7.4 acre tract of land in Montgomery County, known as the W. P. McCombs State School Land Tract M 23381.

Appellee cross-claimed against the State, the State School Land Board and its members for a return of the money he had paid to the State under the contract.

On January 31, 1959, a Mr. John Reed requested the State Land Commissioner to place the McCombs tract up for oil and gas lease bidding at the next bid letting by the State School Land Board.

On February 17, 1959, the School Land Board authorized a lease sale for April 7, 1959, and included the McCombs tract among the lands offered and advertised for lease sale.

The method of sale provided for and advertised by the Board was for the submission of sealed bids to the General Land Office not later than 10:00 a. m., April 7, 1959.

The rules of the Board and the notice for bids herein [1] contained this provision:

"Separate bids must be filed for each area identified by a separate MGL No., and the cash offered must accompany each bid in some form payable at par to the Commissioner of the General Land Office in Austin, Texas."

On April 7, 1959, the School Land Board opened three bids, previously received, for a lease on the McCombs tract. One bid was for a cash bonus of $135.13, one for $999 and appellee's bid of $7,483.25.[2]

Accompanying appellee's bid were three cashier's checks, one for 1% of the total bid as required by Art. 5382d–1, Vernon's Ann.Civ.St., as a special sale fee, one payable to the Commissioner of the General Land Office for $3,741.63, and one payable to Jefferson G. Smith for $3,741.62.

It is conceded that the check payable to Mr. Smith was in error, appellee having become confused by instructions with refer-

---

1. Art. 5421c–3, Sec. 7, V.A.C.S. authorizes and requires the Board to adopt rules of procedure and regulation for the sale and leasing of areas such as here involved, and Sec. 12 id. requires newspaper notice of proposed leasing or sale.

2. All provisions of the lease as to royalty, drilling etc. were fixed by the Board, the cash bonus being the only variant.

ence to the submission of bids for leases on land subject to the Relinquishment Act.

On the day the bids were opened, April 7, 1959, the bids received were tabulated under direction of the Land Commissioner and distributed to interested parties. This tabulation bore the following endorsement:

"This tabulation is merely a temporary listing of the bids received for oil and gas leases on the areas described herein and is not to be considered as an indication that all high bids will be accepted and awards made by the School Land Board. The final action by the School Land Board will be delayed until all bids have been checked for correct description and other legal requirements before action may be taken by the Board."

On the following day, April 8, 1959, the Land Commissioner returned the cashier's check payable to Jefferson G. Smith to Mr. Charles L. Krueger, attorney for appellee, with the following communication:

"April 8, 1959
"Re: R. H. Martin's Bid on Marginal No. 12, April 7th Sale—Charles L. Krueger, Agent and Attorney for R. H. Martin

"Mr. Charles L. Krueger
"Attorney at Law
"Houston, Texas

"Dear Mr. Krueger:

"Please find enclosed herewith a cashier's check made payable to Jefferson G. Smith with you as remitter on the check. This check cannot be cashed by the General Land Office, and therefore we are returning it to you in the amount of $3,741.62.
"Sincerely yours,
"Bill Allcorn, Commissioner
"By
"Jack Giberson,
"Director Legal Division."

The Board having recessed on April 7, 1959, to April 14, 1959, without acting on any of the bids then opened, the Board reconvened on April 14, 1959, and accepted all high bids and rejected all low bids opened on April 7th.

The minutes of this meeting were approved April 28, 1959.

When the Board acted on April 14 and 18, as stated, the Board then knew that the full amount of the bid by appellee had not been paid in cash or its equivalent as required by its rules.

The reason given by appellee for not replacing the Smith check with a check payable to the Land Commissioner was that on the day his bid was submitted he learned through an inspection of the lease area by one of his employees that the McCombs tract had been drilled for oil, production obtained, the producing sand depleted, the well abandoned, and that the area in which the tract was located was being used for salt water disposal. This information, in the opinion of appellee, rendered the lease practically worthless.

Appellee testified that on the morning of April 8th he telephoned Mr. Krueger, telling him he was unhappy with the lease because of what he had learned regarding it and requesting Mr. Krueger to try to withdraw the checks which accompanied his bid. Mr. Krueger complied with this instruction and requested return of both checks. Only the Smith check was returned, however.

Mr. Krueger testified that the request for return of the check was made April 8th.

Mr. Jack Giberson, an attorney in the General Land Office, testified somewhat at variance with the testimony of Mr. Krueger. We quote his version of the matter:

"To continue with what took place, we opened the bids at 10:00 o'clock. The Board was in session, and after the bids were opened, they recessed. After the bids were opened, it was de-

termined that Mr. Krueger's client's bid was the high bid, but it was not exactly in order. So Charlie Krueger, knowing me, came to me and asked what could be done. He assured me that his client wanted to bid, that that was the reason that he bid on the tract, but there was a misunderstanding on his part, and that he wanted this State lease. He submitted the one percent, which is the correct amount, of seventy-four dollars and some cents, as required by law. He submitted two checks instead of one. He submitted a check in the name of Jefferson G. Smith, and one to the State of Texas, and he split them out of the bid. I have forgotten the exact amount. It was seven thousand four hundred or seven thousand five hundred dollars. These instruments that have been offered in evidence will reflect the correct amount. So I told Mr. Krueger if he was sure that his client wanted the bid, that as a favor to him and his client, that we would present this to the Board, and ask them to waive the technicality. This was only a procedural matter that we had to ask the Board to waive, so Charlie assured me that everything was in order, and that if I would do that as a favor for him, he would appreciate it, and I agreed to do that. So, as I recall, I did not have a conversation with Mr. Krueger or with Mr. Martin until after the Board met on the 14th of April, 1959, and at that time Dr. McNutt was secretary of the School Land Board. He placed this Martin matter on the agenda, and he opened up and presented it to the Board and turned the discussion over to me, at which time I informed the Board of what had taken place, and assured them that Mr. Martin wanted to bid. Had I been informed otherwise, I certainly would not have asked the Board to waive any technical requirements. The Board doesn't need the money that bad, and they are not in that type of business. So the Board said if I was sure of that fact, they would award the bid to Mr. Martin, which they did do. After the Board meeting—as far as the time element, I don't think it makes a lot of difference whether it was that afternoon or the next day—but it was after the Board meeting that I phoned Mr. Krueger and told him that the Board had awarded the lease to Mr. Martin, and at that time he made no mention of Mr. Martin not wanting the tract at all. And I told him that I would confirm that with a letter, which I recall I did. After I confirmed that with the letter, and we waited a couple of days, as I recall, I phoned Mr. Krueger again and he told me that Mr. Martin was coming up to see us, and wanted to discuss this bid with us, and it was on April 20, 1959, that Mr. Krueger and Mr. Martin came into my office and discussed this bid with us."

Mr. Gordon McNutt, a geologist employed in the General Land Office, testified:

"Q. The matter of Mr. Martin's bid is now before the Court, and it remained in that same status quo until the 8th, when Mr. Charles Krueger, a local attorney here in Austin, called at the Land Office and talked to you; is that correct? A. I don't recall that he talked with me personally. I think he possibly talked with someone in the office on the 8th.

"Q. Well, do you know that on that day that he in behalf of Mr. Martin, on the 8th, came to the Land Office and informed either you, or Mr. Giberson, or the people in charge there that Mr. Martin had ascertained that this property had already been developed and depleted, and that there was a salt water injection well in the area and that he did not care to go through with the transaction, on the 8th? A. I think he—something to that effect, yes, sir.

"Q. That is correct, isn't it? A. Something to that effect.

\* \* \* \* \* \*

"Q. Now, then, the Board determined nevertheless, although Mr. Martin had withdrawn his bid, determined to accept it on the 14th, and the minutes so reflect; is that right? A. Yes. After a discussion—this particular rule or regulation where the money is supposed to be submitted with the bid was discussed, and the Board decided to waive that because Mr. Krueger had contacted the office and asked us to accept it.

"Q. Mr. McNutt, Mr. Krueger had talked to you gentlemen about that phase of the matter the 7th day of April, the day the bids were opened, hadn't he? A. That's right.

"Q. But the next day, April the 8th, you have already testified he came there and made known that Mr. Martin did not care to go through with the transaction. A. I don't remember the exact date, but I do remember it.

"Q. Well, it was the 8th; it was certainly before the 14th, wasn't it? A. That is correct."

■ In the view we take of the case, it is unnecessary that we discuss the testimony except to say that in support of the Trial Court's judgment we would construe the evidence in a manner most favorable to appellee.

■ It is our opinion that the award made by the Board, in violation of its rule requiring the amount of the bid to ac-

company the bid in cash or its equivalent, is void.

The rule, a salutary rule, was adopted, no doubt, to prevent litigation such as this in which the rights of the parties are held in abeyance pending final judgment.

■ The oil business is volatile. Its values are here today and gone tomorrow. It is common knowledge that oil leases, of the nonproducing variety, are not sold on credit. "Cash bonus" means a bonus paid in cash. The situation here is typical of the one which would develop if the practice was to sell oil leases on time. The willingness to pay for a worthless lease would be as weak as the landowner's eagerness to accept nominal payment for a very valuable lease. Such sales would breed litigation.

The Board, in our opinion, wisely and prudently provided that the bonus for oil and gas leases sold by it should be paid in cash. This is not a rule of procedure or form. It is a rule of substance. It should be enforced as long as it stands unmodified or unrepealed.[3] We need only quote the following from 1 Tex.Jur.2d, Administrative Law, p. 659, Sec. 14, to sustain our decision:

"An agency's rules are generally regarded as having the force and effect of law. Consequently, an agency is bound by its own valid and subsisting rules. It is not privileged to violate these rules, nor does its action in violation of a rule confer any vested right upon a party in whose favor it acted. Even if the agency improperly agrees to violate, or acquiesces in the violation of, a rule, the party acquires no rights through such violation.

3. The State recognizes the danger inherent in disobedience of this rule when it says in its reply brief:

"Undoubtedly situations can arise where to waive a rule such as the instant one would be prejudicial to some or all of the parties concerned and might also amount to the School Land Board accepting something less than the 'best bid submitted' in violation of Article 5421c–3, Section 13. Certainly under such facts and circumstances the School Land Board could not rightfully waive such a rule. Its action would be both arbitrary and capricious as well as directly violative of the statute under which it was acting. However, the instant case is not such a case."

"Although the agency may create exceptions to its rules, the exceptions must not be arbitrary or such as to constitute an unreasonable discrimination."

It is unnecessary for us to consider other questions presented by the parties, except as they relate to appellee's cross-action.

■ The State's contention that appellee's cross-action is, in effect, a suit against the State to the bringing of which the State has not consented and, therefore, cannot be maintained is overruled.

The State, not appellee, brought this suit. Appellee's right to defend such suit included the right to cross-claim and obtain affirmative judgment on such claim where the claim so asserted is incident to, connected with, arises out of, or is germane to the suit or controversy brought by the State. Anderson, Clayton & Co. v. State, 122 Tex. 530, 62 S.W.2d 107; Commonwealth of Massachusetts v. Davis, Tex.Civ.App. Austin, 160 S.W.2d 543, reversed in part 140 Tex. 398, 168 S.W.2d 216.

Appellee's claim to recover the very money which the State seeks to retain, the claim of each arising from the same single transaction between the parties, could not be more closely related or more germane.

The judgment in this case reads, in part:

"Insofar as the cross-action of R. H. Martin against The State of Texas and his third party action against the School Land Board and its members is concerned, it is ordered adjudged and decreed that the said R. H. Martin shall recover the sum of $3,741.63 and the sum of $74.83 as against cross-defendant, The State of Texas, and against third party defendants, the School Land Board and its members, Price Daniel, Governor of Texas, Will Wilson, Attorney General of Texas, and Bill Allcorn, Commissioner of the General Land Office of Texas. And it is further ordered and decreed that the said cross-defendant and the third party defendants shall forthwith pay over and deliver or cause to be paid over and delivered, to R. H. Martin, the said sums of money herein adjudged to him; payment thereof to him to be made out of the suspense fund maintained by Bill Allcorn, Commissioner of the General Land Office, and to be made by the said Commissioner to the said R. H. Martin in the form of a check or checks to the order of R. H. Martin, and delivered to him or to his attorneys of record."

Appellants contend that there is neither pleading nor evidence that the funds ordered paid by them to appellee are in a suspense account maintained by the Land Commissioner, or that there is such an expense account or that there is legislative authority for such an account, and that the form of the judgment violates Art. III, Sec. 44 of the Constitution of Texas, Vernon's Ann.St.

Factually, appellants are correct.

■ We believe, however, that if these funds are being held as the judgment indicates, that the judgment is proper and not subject to the objections made by these appellants.

We wish to make it clear, if necessity for clarity exists, that the judgment rendered is not a personal judgment against any member of the Land Board, and that unless the judgment can be satisfied in the manner prescribed by it that the judgment shall be and remain the liability of the State only, and until satisfied in a lawful manner.

As so modified, the judgment of the Trial Court is affirmed.

Modified and as Modified, Affirmed.