# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00632-CV

State of Texas, Appellant

v.

Precision Solar Controls, Inc., Appellee

FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 04-197-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

**O P I N I O N**

Appellant the State of Texas, acting on behalf of "its agency or department, the Texas Department of Transportation" ("TxDOT"), sued appellee Precision Solar Controls, Inc.,[1] alleging that Precision Solar had manufactured and sold defective traffic signals that TxDOT used across the State. The State asserted claims for breach of contract, breach of warranty, and quantum meruit. Precision Solar answered, denying that its products were defective and asserting that it had not entered into any contracts with the State or TxDOT. Precision Solar also filed a counterclaim, alleging that the State had committed business disparagement by wrongfully communicating to governmental offices and industry representatives statewide that Precision Solar's products were

---

[1] The State also sued Texas Highway Products Ltd., which distributes Precision Solar's products, but Texas Highway Products is not a party to this appeal.

defective and that it had breached its warranty. Precision Solar alleged that fewer than ten of the thousands of signals used in Texas had malfunctioned; only two of those malfunctions were a result of Precision Solar's manufacturing, while the others were the result of mishandling, damage, or improper installation; and Precision Solar had satisfied its warranty by offering to repair or replace any malfunctioning products during the five-year warranty period. The State filed a plea to the jurisdiction, arguing that Precision Solar's claims were barred by sovereign immunity. Precision Solar responded, asserting that by filing its lawsuit, the State waived its immunity to counterclaims incident to, connected with, arising out of, or germane to the State's claims. The trial court denied the State's plea, and the State filed this appeal. We affirm the trial court's order.

## Discussion

The State is protected from suit and from liability by sovereign immunity. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Unless the State consents to suit, sovereign immunity defeats a court's exercise of subject-matter jurisdiction over the State. *Id*. A plea to the jurisdiction seeks to have a case dismissed for lack of subject-matter jurisdiction, and we review a trial court's ruling on a plea to the jurisdiction de novo.[2] *Texas Parks & Wildlife Dep't v. Dearing*, 150 S.W.3d 452, 457-58 (Tex. App.—Austin 2004, pet. denied). A party seeking to prevail on a plea to the jurisdiction must show that even if the claimant's allegations are true, there is an incurable jurisdictional defect apparent on the face of the pleadings. *Id*. In reviewing a trial

---

[2] Immunity from suit is properly made the subject of a plea to the jurisdiction, while immunity from liability is an affirmative defense. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).

court's decision on a plea to the jurisdiction, we view the pleadings in favor of the claimant, considering the claimant's intent and accepting its factual allegations as true, rather than looking at the merits of the case. *Id*. at 458.

Precision Solar argues that the supreme court's decision in *Reata Construction Corp. v. City of Dallas* is dispositive of this appeal, while the State attempts to distinguish *Reata Construction* and asserts that it does not control our decision. *See* No. 02-1031, 2004 Tex. LEXIS 303 (Tex. April 2, 2004) (pending on reh'g). Therefore, a discussion of the facts and holding of *Reata Construction* is helpful to our determination. The City of Dallas issued a permit to a contractor to install fiber optic cable. *Id.* at *1. The contractor hired Reata as a subcontractor on the project and, after Reata inadvertently drilled into a water main, a nearby property owner whose building was flooded sued Reata and the contractor for negligence. *Id*. Reata filed a third-party claim against the City, alleging that the City had misidentified the location of the water main. *Id*. at *1-2. The City filed a plea in intervention to assert a negligence claim against and seek damages from Reata, and the next day filed a plea to the jurisdiction, asserting it was immune from Reata's claims. *Id*. at *2. The trial court denied the plea to the jurisdiction, and the City appealed. *Id*. at *3. In a unanimous per curiam opinion, the supreme court affirmed the trial court's denial, holding that the City waived its governmental immunity from suit and subjected itself to the trial court's jurisdiction when it filed claims against Reata.[3] *Id*. at *4.

---

[3] The supreme court handed down its opinion in April 2004, and in October 2004, a majority voted to grant rehearing. The court heard oral argument on rehearing on December 2, 2004.

3

Precision Solar argues that the trial court properly denied the State's plea to the jurisdiction. The State argues that *Reata Construction* is distinguishable because: (1) Reata asserted a negligence-based claim, a claim for which the City's immunity might have been waived under the Texas Tort Claims Act,[4] rather than an intentional tort, as is asserted here by Precision Solar; (2) Reata's negligence claim mirrored the City's negligence counterclaim, whereas Precision Solar's counterclaim for business disparagement does not mirror the State's claims for breach of contract and breach of warranty; and (3) the immunity at issue in *Reata Construction* was "governmental immunity held by a mere municipal corporation rather than the sovereign State." Thus, the State asserts that *Reata Construction* is not controlling and that we should hold that the State did not waive its sovereign immunity from suit by suing Precision Solar.

The State argues that because it is the State, and not a municipality, the *Reata Construction* holding should not be extended to the "different context of *sovereign* immunity." The State is correct that sovereign immunity and governmental immunity, although frequently used interchangeably, are two different concepts.[5] *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). "Sovereign immunity refers to the State's immunity from suit and liability" and applies to "the various divisions of state government, including agencies, boards, hospitals, and universities." *Id*. "Governmental immunity, on the other hand, protects subdivisions of the State, including counties, cities, and school districts." *Id*. Although the two concepts protect

---

[4] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 2005 & Supp. 2005).

[5] We note that the legislature itself used both terms in section 101.025 of the Tort Claims Act. That section, titled, "Waiver of *Governmental* Immunity; Permission to Sue," provides, "*Sovereign* immunity to suit is waived and abolished to the extent of liability created by this chapter." *Id*. § 101.025(a) (West 2005) (emphasis added).

different governmental entities, the supreme court has recognized that sovereign immunity, like governmental immunity, may be waived, usually through a constitutional provision or legislative enactment.[6] *Id*. at 695.

Although immunity is usually waived through constitutional or legislative provisions, the courts have held that waiver may also occur if a governmental entity avails itself of the judicial system and seeks to have its rights determined by a court, thus submitting itself to the court's jurisdiction. *Anderson, Clayton & Co. v. State ex rel. Allred*, 62 S.W.2d 107, 110 (Tex. 1933).

---

[6] The State argues that the supreme court has held that "the State does not waive immunity from suit when it brings suit," citing to *Bates v. Republic of Texas*, 2 Tex. 616, 618-19 (1847) ("set-off, though not denominated a suit, is in the nature of a cross action" and "cannot be instituted or set up against the government without its consent"), and *Borden v. Houston*, 2 Tex. 594, 611-13 (1847) (refusing to allow defendants to remit bonds as set-off to customs monies owed by defendants to government; "The government can not be coerced in any manner."). *But see Bitter v. Bexar County*, 11 S.W.2d 163, 166 (Tex. Comm'n App. 1928, judgm't adopted) (tax collector "did not sue the county . . . ; the County sued him for recovery of the 'residue'; and in computing that 'residue' it was necessary . . . to take all amounts to which he was lawfully entitled . . . into consideration"; court distinguished *Borden* and *Bates*, noting that Borden's and Bates's claims arose "in transactions distinct from and independent of those out of which the obligations sought to be enforced by the [governmental] plaintiffs arose" and that government was "at all times entitled to have the whole of the specific funds involved, and not merely a residue or balance thereof").

The supreme court has not relied on *Bates* or *Borden* for the proposition that a counterclaim may not be brought against and in response to a suit filed by the State since 1881. *See Dean v. State*, 54 Tex. 313, 314 (1881); *Ex parte Towles*, 48 Tex. 413, 447-48 (1877) ("The courts take jurisdiction of suits against the State, whether for money or for land certificates, only when the State has given its consent by statute, and then the jurisdiction is taken by such tribunals and under such regulations as the statute directs."); *Chevallier's Adm'r v. State*, 10 Tex. 315, 316 (1853). Although the supreme court has not expressly overruled *Bates* and *Borden*, it has more recently stated that when the State files suit, it becomes bound by the court's judicial determination and the defense may raise all matters properly defensive, including counterclaims germane to the State's claims. *Anderson, Clayton & Co. v. State ex rel. Allred*, 62 S.W.2d 107, 110 (Tex. 1933); *see also Reata Constr. Corp. v. City of Dallas*, No. 02-1031, 2004 Tex. LEXIS 303, at *6-7 (Tex. April 2, 2004) (pending on reh'g) ("when a governmental entity files suit against a party, that entity waives, at a minimum, immunity from suit for counterclaims filed as a consequence of the suit").

In *Anderson, Clayton & Co.*, the Attorney General sought penalties from and a temporary injunction against a private company for statutory violations. *Id*. at 107. The private party in turn counterclaimed, seeking an injunction against the Attorney General and other State officials. *Id*. at 107-08. The State argues that the supreme court in *Anderson, Clayton & Co.* addressed only whether the counterclaim could be brought against a State official and whether a particular trial court could consider the matter under venue principles, asserting that the court did not decide "anything at all about the subject matter of claims that could be brought against the State."[7] However, in noting the general rule that the State was immune from suit, the supreme court stated that "where a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy." *Id*. at 110; *see also Kinnear v. Texas Comm'n on Human Rights ex rel. Hale*, 14 S.W.3d 299, 300 (Tex. 2000) (holding that when Commission sued Kinnear, it waived immunity from suit as to Kinnear's counterclaim for attorney's fees sought as a consequence of Commission's lawsuit).

We do not read the supreme court's holdings in *Anderson, Clayton & Co.* and *Reata Construction* so narrowly as to apply only to suits involving political subdivisions, injunctive relief, or questions of venue. The supreme court's language is not so restrictive as that, and its reasoning

---

[7] In arguing that sovereign immunity is broader and more protective than governmental immunity, the State cites a case holding that a political subdivision may not assert immunity against the State, from which the subdivision derives its immunity. *See Texas Workers' Comp. Comm'n v. City of Eagle Pass*, 14 S.W.3d 801, 803-04 (Tex. App.—Austin 2000, pet. denied) (political subdivision's "derivative" immunity protects against suits by private parties but does not act "as a shield against the State, from which the subdivision derives its immunity"). That case did not address whether the subdivision would be able to cross-claim against the State in the same suit.

6

in *Anderson, Clayton & Co.* and *Reata Construction* applies here, where the State did not merely intervene or counterclaim once sued, but instead initiated this lawsuit, seeking damages for breach of contract and breach of warranty, thus subjecting itself to the court's jurisdiction. We therefore disagree with the State's argument that *Anderson, Clayton & Co.* and *Reata Construction* do not apply to this cause brought by the State.[8]

The State has diligently attempted to distinguish this suit from cases containing language to the effect that the State may waive its immunity by filing suit. However, we believe that the supreme court's clear language in *Anderson, Clayton & Co.* and *Reata Construction*, despite differences in the procedural stances or governmental entities involved,[9] shows that the State, by filing suit in a trial court, may be held to have waived its sovereign immunity from suit as to counterclaims germane to the subject matter of the State's claims.

---

[8] The State argues that policy considerations require that Precision Solar not be allowed to bring its counterclaim against the State. However, in deciding this case, we are simply applying the law as set forth by the supreme court, and policy considerations do not enter into our decision-making. *See Font v. Carr*, 867 S.W.2d 873, 879 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.); *see also Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex. 1964) (supreme court's decisions are binding on lower courts); *Ran Ken, Inc. v. Schlapper*, 963 S.W.2d 102, 107 (Tex. App.—Austin 1998, pet. denied) (extension of supreme court precedent is left to that court, and lower courts must conscientiously follow supreme court's determinations of law; "[w]hile courts of appeals are often called on to recognize new exceptions to legal principles, we must be loath to ignore a deliberate and express position enunciated by a higher court").

[9] The State strives to distinguish cases holding that the State may waive its immunity by seeking damages, arguing that the factual or procedural backgrounds of those cases differs from the case at hand. The State asserts that we should instead follow *Borden* and *Bates*, which it notes have never been explicitly overruled. However, *Borden* and *Bates* also involved situations different than this suit; *Bates* has been summarized by the supreme court as standing for the proposition that, "in the absence of a statute authorizing it, in an action by the State or any municipality for taxes, offsetting of an indebtedness due by the State or municipality to the tax debtor will not be allowed." *State v. Humble Oil & Refining Co.*, 169 S.W.2d 707, 708 (Tex. 1943).

The State argues that we erred in the past by holding that the State waives its immunity from counterclaims seeking an "affirmative judgment," and invites us to overrule *Commonwealth of Massachusetts v. Davis*, 160 S.W.2d 543 (Tex. Civ. App.—Austin), *rev'd in part on other grounds*, 168 S.W.2d 216 (Tex. 1942), *State v. Martin*, 347 S.W.2d 809 (Tex. Civ. App.—Austin 1961, writ ref'd n.r.e.), and *State v. Fidelity & Deposit Co.*, 127 S.W.3d 339 (Tex. App.—Austin 2004, pet. filed). In *Davis*, we quoted the supreme court's holding in *Anderson, Clayton & Co.* that when the State sues and seeks a judicial determination of its rights, it is bound by that determination, "and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy." *Anderson, Clayton & Co.*, 62 S.W.2d at 110, *quoted in Davis*, 160 S.W.2d at 547. In *Martin*, we stated that when the State filed suit, the defendant's "right to defend such suit included the right to cross-claim and obtain affirmative judgment on such claim where the claim so asserted is incident to, connected with, arises out of, or is germane to the suit or controversy brought by the State." 347 S.W.2d at 814 (citing *Anderson, Clayton & Co.*, 62 S.W.2d at 110; *Davis*, 160 S.W.2d at 547); *see also Fidelity & Deposit Co.*, 127 S.W.3d at 344-45 (citing *Anderson, Clayton & Co.* and *Martin* and holding, "Without commenting on the merits of either parties' claims, but based on the face of the pleadings, it is clear that the issues that will arise in Fidelity's counterclaim are germane to the State's suit. If this Court were to conclude that Fidelity could not counterclaim against the State in district court, Fidelity and the State would essentially have to litigate many of the same issues twice, the State in district court and Fidelity through administrative proceedings.").

We decline to overrule our precedent and note that in *Reata Construction* the supreme court quoted approvingly from *Martin*, stating, "[B]y filing a suit for damages, a governmental entity

8

waives immunity from suit for *any claim* that is 'incident to, connected with, arises out of, or is germane to the suit or controversy brought by the State.'" 2004 Tex. LEXIS 303, at *7 (quoting *Martin*, 347 S.W.2d at 814) (emphasis added); *see also State v. Cook United, Inc.*, 463 S.W.2d 509, 516 (Tex. Civ. App.—Fort Worth), *aff'd as modified on other grounds*, 469 S.W.2d 709 (Tex. 1971) (quoting *Martin*); *State v. Brunson*, 461 S.W.2d 681, 684 (Tex. App.—Corpus Christi 1970, writ ref'd n.r.e.) (citing *Anderson, Clayton & Co.* and *Martin*) ("Appellees' right to defend included the right to file a cross-action and obtain affirmative relief where their claim is incident to, connected with, or is germane to the suit or controversy originated by the State."); *State v. Noser*, 422 S.W.2d 594, 599 n.1 (Tex. Civ. App.—Corpus Christi 1967, writ ref'd n.r.e.) (citing *Martin* and *Davis*). *But see Fesal v. Hutchinson County*, 443 S.W.2d 937, 938 (Tex. Civ. App.—Amarillo 1969, writ ref'd n.r.e.) (distinguishing *Martin* and holding that county did not waive immunity from tort liability by filing suit on sworn account for services rendered by county hospital).

The State next argues that Precision Solar's counterclaim for business disparagement does not fall within the scope of any waiver resulting from the State's suit for breach of contract and breach of warranty. The State contends that the intentional tort alleged by Precision Solar is of a different nature and arises from a different body of law than the State's claims, and thus cannot be considered germane to the State's claims.

The State is correct that the counterclaim leveled by Precision Solar is an intentional tort and does not mirror the breach of contract and breach of warranty claims brought against it by the State. The State is also correct that the Tort Claims Act does not waive immunity for intentional torts. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057 (West 2005). However, the Tort Claims Act is not the basis of the State's waiver of immunity in this case. If the Tort Claims Act had waived

9

the State's immunity for the intentional tort of business disparagement, we would not be called upon to decide whether the State waived its immunity by filing suit. Therefore, the fact that the Tort Claims Act does not waive immunity from intentional torts has no bearing on whether the State may waive its immunity by bringing suit.

Case law holds that the State, by seeking damages in a lawsuit, waives immunity for any claims incident to, connected with, arising out of, or germane to the State's claims. *Reata Constr.*, 2004 Tex. LEXIS 303, at *7 (quoting *Martin*, 347 S.W.2d at 814); *Anderson, Clayton & Co.*, 62 S.W.2d at 110 ("[W]here a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy."); *see also Kinnear*, 14 S.W.3d at 300 ("Because the Commission initiated this proceeding under the Texas Fair Housing Act, and Kinnear claimed attorney fees as a consequence of that suit, the jurisdictional question in this case was answered when the Commission filed suit, regardless of whether the Commission can ultimately be liable for fees."). Our sister court in *City of Dallas v. Redbird Development Corp.* examined what kind of claims fall within the *Reata Construction* waiver by suit, addressing the City's contention that claims should only be considered to be "germane" to the governmental unit's claims if they involve "offsets and defense matters rather than a counterclaim." 143 S.W.3d 375, 381 (Tex. App.—Dallas 2004, no pet.). The court considered the usual meaning of "germane," reviewing the cases cited in *Reata Construction*, and determined that "germane" is not limited to the narrow definition proposed by the City. *Id.* at 381-83. We agree that it is not necessary for Precision Solar's counterclaim to mirror the cause of action brought by the State. Instead, Precision Solar's claims

10

will fall within the *Reata Construction* waiver if they are related, connected, or pertinent to the matter in controversy. *See id*. at 381.

In determining whether one claim is germane or incident to another, it is helpful to consider issues related to res judicata and compulsory and permissive counterclaims. "Texas law forbids splitting one claim into several suits when a single suit will suffice," *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 278 (Tex. 2004), and causes of action arising out of the same facts should, if practicable, be litigated in the same lawsuit. *Morris v. Landoll Corp.*, 856 S.W.2d 265, 268 (Tex. App.—Fort Worth 1993, writ denied) (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex. 1992)); *see also Ray Ferguson Interests, Inc. v. Harris County Sports & Convention Corp.*, 169 S.W.3d 18, 26 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that by asserting compulsory counterclaims in response to suit brought by company, governmental entity waived immunity from suit). Rule 97 of the rules of civil procedure provides that a party *must* assert any counterclaim "not the subject of a pending action, which at the time of filing . . . the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and does not require the presence of third parties over whom the trial court could not exercise jurisdiction. Tex. R. Civ. P. 97(a) ("Compulsory Counterclaims"). A party *may* assert a counterclaim "whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim," except that a tort counterclaim may only be asserted in response to a contractual demand if it "arises out of or is incident to or is connected with same." Tex. R. Civ. P. 97(b), (g). Under principles of res judicata, a party may not re-litigate claims already decided in an earlier suit or assert new claims arising out of the same subject matter as the previous suit and that should have been litigated in the earlier suit. *Bates*, 147

11

S.W.3d at 278; *Cadle Co. v. Wilson*, 136 S.W.3d 345, 354 (Tex. App.—Austin 2004, no pet.) (citing *Barr*, 837 S.W.2d at 628).

To succeed on its claims for breach of warranty and breach of contract, the State will have to show that the signals were defective and poorly made and that Precision Solar did not live up to its promises once any defects were made known. Precision Solar's claim for business disparagement will in part require contrary findings that the signals functioned as intended and that it satisfied its warranties and contracts in the event that any signals malfunctioned. Although the elements of the claims differ, the core facts are the same, and the issues of whether the signals functioned as intended or were defective and whether Precision Solar offered or failed to remedy any defects are necessary to the claims asserted by both the State and Precision Solar. If Precision Solar were not to bring this counterclaim now and attempt to raise it later, sovereign immunity issues aside, factual determinations made in this proceeding about the quality of the signals and whether Precision Solar breached any contracts or warranties would be res judicata on Precision Solar's later claim for business disparagement. *See Bates*, 147 S.W.3d at 279; *Cadle Co.*, 136 S.W.3d at 354.

We hold that Precision Solar's intentional tort counterclaim does not fall outside the State's waiver of immunity effected by its filing suit against Precision Solar. *See Ray Ferguson Interests*, 169 S.W.3d at 26 (holding that by asserting compulsory counterclaims in response to suit brought by company, governmental entity waived immunity from suit for company's claims for intentional torts of fraud and conspiracy); *see also City of Carrollton v. Golf Works, Inc.*, No. 05-03-01831-CV, 2004 Tex. App. LEXIS 6952, at *2 (Tex. App.—Dallas July 30, 2004, no pet.) (mem. op.) (by suing for breach of contract and breach of warranty, City waived immunity against tort counterclaims arising out of same contract). We further hold that under the facts of this case,

Precision Solar's claim for business disparagement arises out of, is incident to, or is connected with the sale and quality of the traffic signals, as are the State's claims for breach of contract and breach of warranty. *See* Tex. R. Civ. P. 97. Thus, we hold that Precision Solar's claim is sufficiently germane to the State's claims to survive the State's plea to the jurisdiction. *See Redbird Dev. Co.*, 143 S.W.3d at 383 ("The City's and RDC's claims arise from the same transaction: the lease of Redbird Airport land and facilities. . . . Resolution of the rights of the parties before us depends on facts pertinent to the parties' conduct regarding the same lease. . . . It is clear that RDC's counterclaim is 'compulsory' in that it 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.'").

**Conclusion**

Because Precision Solar's claim is sufficiently connected to the State's claims and after viewing the pleadings in favor of Precision Solar and taking its allegations of facts as true, *see Dearing*, 150 S.W.3d at 458, we hold that by suing Precision Solar for breach of contract and breach of warranty, the State waived its sovereign immunity from suit with regard to Precision Solar's counterclaim. We affirm the trial court's denial of the State's plea to the jurisdiction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: March 17, 2006

13