TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-04-00632-CV






State of Texas, Appellant


v.


Precision Solar Controls, Inc., Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT

NO. 04-197-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING





O P I N I O N




 Appellant the State of Texas, acting on behalf of "its agency or department, the Texas
Department of Transportation" ("TxDOT"), sued appellee Precision Solar Controls, Inc., (1) alleging
that Precision Solar had manufactured and sold defective traffic signals that TxDOT used across the
State. The State asserted claims for breach of contract, breach of warranty, and quantum meruit. 
Precision Solar answered, denying that its products were defective and asserting that it had not
entered into any contracts with the State or TxDOT. Precision Solar also filed a counterclaim,
alleging that the State had committed business disparagement by wrongfully communicating to
governmental offices and industry representatives statewide that Precision Solar's products were
defective and that it had breached its warranty. Precision Solar alleged that fewer than ten of the
thousands of signals used in Texas had malfunctioned; only two of those malfunctions were a result
of Precision Solar's manufacturing, while the others were the result of mishandling, damage, or
improper installation; and Precision Solar had satisfied its warranty by offering to repair or replace
any malfunctioning products during the five-year warranty period. The State filed a plea to the
jurisdiction, arguing that Precision Solar's claims were barred by sovereign immunity. Precision
Solar responded, asserting that by filing its lawsuit, the State waived its immunity to counterclaims
incident to, connected with, arising out of, or germane to the State's claims. The trial court denied
the State's plea, and the State filed this appeal. We affirm the trial court's order.


Discussion


 The State is protected from suit and from liability by sovereign immunity. Texas
Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). Unless the State consents
to suit, sovereign immunity defeats a court's exercise of subject-matter jurisdiction over the State. 
Id. A plea to the jurisdiction seeks to have a case dismissed for lack of subject-matter jurisdiction,
and we review a trial court's ruling on a plea to the jurisdiction de novo. (2) Texas Parks & Wildlife
Dep't v. Dearing, 150 S.W.3d 452, 457-58 (Tex. App.--Austin 2004, pet. denied). A party seeking
to prevail on a plea to the jurisdiction must show that even if the claimant's allegations are true, there
is an incurable jurisdictional defect apparent on the face of the pleadings. Id. In reviewing a trial
court's decision on a plea to the jurisdiction, we view the pleadings in favor of the claimant,
considering the claimant's intent and accepting its factual allegations as true, rather than looking at
the merits of the case. Id. at 458.

 Precision Solar argues that the supreme court's decision in Reata Construction Corp.
v. City of Dallas is dispositive of this appeal, while the State attempts to distinguish Reata
Construction and asserts that it does not control our decision. See No. 02-1031, 2004 Tex. LEXIS
303 (Tex. April 2, 2004) (pending on reh'g). Therefore, a discussion of the facts and holding of
Reata Construction is helpful to our determination. The City of Dallas issued a permit to a
contractor to install fiber optic cable. Id. at *1. The contractor hired Reata as a subcontractor on the
project and, after Reata inadvertently drilled into a water main, a nearby property owner whose
building was flooded sued Reata and the contractor for negligence. Id. Reata filed a third-party
claim against the City, alleging that the City had misidentified the location of the water main. Id.
at *1-2. The City filed a plea in intervention to assert a negligence claim against and seek damages
from Reata, and the next day filed a plea to the jurisdiction, asserting it was immune from Reata's
claims. Id. at *2. The trial court denied the plea to the jurisdiction, and the City appealed. Id. at *3. 
In a unanimous per curiam opinion, the supreme court affirmed the trial court's denial, holding that
the City waived its governmental immunity from suit and subjected itself to the trial court's
jurisdiction when it filed claims against Reata. (3) Id. at *4. 

 Precision Solar argues that the trial court properly denied the State's plea to the
jurisdiction. The State argues that Reata Construction is distinguishable because: (1) Reata asserted 
a negligence-based claim, a claim for which the City's immunity might have been waived under the
Texas Tort Claims Act, (4) rather than an intentional tort, as is asserted here by Precision Solar; (2)
Reata's negligence claim mirrored the City's negligence counterclaim, whereas Precision Solar's
counterclaim for business disparagement does not mirror the State's claims for breach of contract
and breach of warranty; and (3) the immunity at issue in Reata Construction was "governmental
immunity held by a mere municipal corporation rather than the sovereign State." Thus, the State
asserts that Reata Construction is not controlling and that we should hold that the State did not waive
its sovereign immunity from suit by suing Precision Solar.

 The State argues that because it is the State, and not a municipality, the Reata
Construction holding should not be extended to the "different context of sovereign immunity." The
State is correct that sovereign immunity and governmental immunity, although frequently used
interchangeably, are two different concepts. (5) See Wichita Falls State Hosp. v. Taylor, 106 S.W.3d
692, 694 n.3 (Tex. 2003). "Sovereign immunity refers to the State's immunity from suit and
liability" and applies to "the various divisions of state government, including agencies, boards,
hospitals, and universities." Id. "Governmental immunity, on the other hand, protects subdivisions
of the State, including counties, cities, and school districts." Id. Although the two concepts protect
different governmental entities, the supreme court has recognized that sovereign immunity, like
governmental immunity, may be waived, usually through a constitutional provision or legislative
enactment. (6) Id. at 695.

 Although immunity is usually waived through constitutional or legislative provisions,
the courts have held that waiver may also occur if a governmental entity avails itself of the judicial
system and seeks to have its rights determined by a court, thus submitting itself to the court's
jurisdiction. Anderson, Clayton & Co. v. State ex rel. Allred, 62 S.W.2d 107, 110 (Tex. 1933). 

 In Anderson, Clayton & Co., the Attorney General sought penalties from and a
temporary injunction against a private company for statutory violations. Id. at 107. The private party
in turn counterclaimed, seeking an injunction against the Attorney General and other State officials. 
Id. at 107-08. The State argues that the supreme court in Anderson, Clayton & Co. addressed only
whether the counterclaim could be brought against a State official and whether a particular trial court
could consider the matter under venue principles, asserting that the court did not decide "anything
at all about the subject matter of claims that could be brought against the State." (7) However, in noting
the general rule that the State was immune from suit, the supreme court stated that "where a state
voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and
the defense will be entitled to plead and prove all matters properly defensive. This includes the right
to make any defense by answer or cross-complaint germane to the matter in controversy." Id. at 110;
see also Kinnear v. Texas Comm'n on Human Rights ex rel. Hale, 14 S.W.3d 299, 300 (Tex. 2000)
(holding that when Commission sued Kinnear, it waived immunity from suit as to Kinnear's
counterclaim for attorney's fees sought as a consequence of Commission's lawsuit).

 We do not read the supreme court's holdings in Anderson, Clayton & Co. and Reata
Construction so narrowly as to apply only to suits involving political subdivisions, injunctive relief,
or questions of venue. The supreme court's language is not so restrictive as that, and its reasoning
in Anderson, Clayton & Co. and Reata Construction applies here, where the State did not merely
intervene or counterclaim once sued, but instead initiated this lawsuit, seeking damages for breach
of contract and breach of warranty, thus subjecting itself to the court's jurisdiction. We therefore
disagree with the State's argument that Anderson, Clayton & Co. and Reata Construction do not
apply to this cause brought by the State. (8)

 The State has diligently attempted to distinguish this suit from cases containing
language to the effect that the State may waive its immunity by filing suit. However, we believe that
the supreme court's clear language in Anderson, Clayton & Co. and Reata Construction, despite
differences in the procedural stances or governmental entities involved, (9) shows that the State, by
filing suit in a trial court, may be held to have waived its sovereign immunity from suit as to
counterclaims germane to the subject matter of the State's claims.

 The State argues that we erred in the past by holding that the State waives its
immunity from counterclaims seeking an "affirmative judgment," and invites us to overrule
Commonwealth of Massachusetts v. Davis, 160 S.W.2d 543 (Tex. Civ. App.--Austin), rev'd in part
on other grounds, 168 S.W.2d 216 (Tex. 1942), State v. Martin, 347 S.W.2d 809 (Tex. Civ.
App.--Austin 1961, writ ref'd n.r.e.), and State v. Fidelity & Deposit Co., 127 S.W.3d 339 (Tex.
App.--Austin 2004, pet. filed). In Davis, we quoted the supreme court's holding in Anderson,
Clayton & Co. that when the State sues and seeks a judicial determination of its rights, it is bound
by that determination, "and the defense will be entitled to plead and prove all matters properly
defensive. This includes the right to make any defense by answer or cross-complaint germane to the
matter in controversy." Anderson, Clayton & Co., 62 S.W.2d at 110, quoted in Davis, 160 S.W.2d
at 547. In Martin, we stated that when the State filed suit, the defendant's "right to defend such suit
included the right to cross-claim and obtain affirmative judgment on such claim where the claim so
asserted is incident to, connected with, arises out of, or is germane to the suit or controversy brought
by the State." 347 S.W.2d at 814 (citing Anderson, Clayton & Co., 62 S.W.2d at 110; Davis, 160
S.W.2d at 547); see also Fidelity & Deposit Co., 127 S.W.3d at 344-45 (citing Anderson, Clayton
& Co. and Martin and holding, "Without commenting on the merits of either parties' claims, but
based on the face of the pleadings, it is clear that the issues that will arise in Fidelity's counterclaim
are germane to the State's suit. If this Court were to conclude that Fidelity could not counterclaim
against the State in district court, Fidelity and the State would essentially have to litigate many of
the same issues twice, the State in district court and Fidelity through administrative proceedings.").

 We decline to overrule our precedent and note that in Reata Construction the supreme
court quoted approvingly from Martin, stating, "[B]y filing a suit for damages, a governmental entity
waives immunity from suit for any claim that is 'incident to, connected with, arises out of, or is
germane to the suit or controversy brought by the State.'" 2004 Tex. LEXIS 303, at *7 (quoting
Martin, 347 S.W.2d at 814) (emphasis added); see also State v. Cook United, Inc., 463 S.W.2d 509,
516 (Tex. Civ. App.--Fort Worth), aff'd as modified on other grounds, 469 S.W.2d 709 (Tex. 1971)
(quoting Martin); State v. Brunson, 461 S.W.2d 681, 684 (Tex. App.--Corpus Christi 1970, writ
ref'd n.r.e.) (citing Anderson, Clayton & Co. and Martin) ("Appellees' right to defend included the
right to file a cross-action and obtain affirmative relief where their claim is incident to, connected
with, or is germane to the suit or controversy originated by the State."); State v. Noser, 422 S.W.2d
594, 599 n.1 (Tex. Civ. App.--Corpus Christi 1967, writ ref'd n.r.e.) (citing Martin and Davis). But
see Fesal v. Hutchinson County, 443 S.W.2d 937, 938 (Tex. Civ. App.--Amarillo 1969, writ ref'd
n.r.e.) (distinguishing Martin and holding that county did not waive immunity from tort liability by
filing suit on sworn account for services rendered by county hospital).

 The State next argues that Precision Solar's counterclaim for business disparagement
does not fall within the scope of any waiver resulting from the State's suit for breach of contract and
breach of warranty. The State contends that the intentional tort alleged by Precision Solar is of a
different nature and arises from a different body of law than the State's claims, and thus cannot be
considered germane to the State's claims. 

 The State is correct that the counterclaim leveled by Precision Solar is an intentional
tort and does not mirror the breach of contract and breach of warranty claims brought against it by
the State. The State is also correct that the Tort Claims Act does not waive immunity for intentional
torts. See Tex. Civ. Prac. & Rem. Code Ann. § 101.057 (West 2005). However, the Tort Claims
Act is not the basis of the State's waiver of immunity in this case. If the Tort Claims Act had waived
the State's immunity for the intentional tort of business disparagement, we would not be called upon
to decide whether the State waived its immunity by filing suit. Therefore, the fact that the Tort
Claims Act does not waive immunity from intentional torts has no bearing on whether the State may
waive its immunity by bringing suit.

 Case law holds that the State, by seeking damages in a lawsuit, waives immunity for
any claims incident to, connected with, arising out of, or germane to the State's claims. Reata
Constr., 2004 Tex. LEXIS 303, at *7 (quoting Martin, 347 S.W.2d at 814); Anderson, Clayton &
Co., 62 S.W.2d at 110 ("[W]here a state voluntarily files a suit and submits its rights for judicial
determination, it will be bound thereby, and the defense will be entitled to plead and prove all
matters properly defensive. This includes the right to make any defense by answer or
cross-complaint germane to the matter in controversy."); see also Kinnear, 14 S.W.3d at 300
("Because the Commission initiated this proceeding under the Texas Fair Housing Act, and Kinnear
claimed attorney fees as a consequence of that suit, the jurisdictional question in this case was
answered when the Commission filed suit, regardless of whether the Commission can ultimately be
liable for fees."). Our sister court in City of Dallas v. Redbird Development Corp. examined what
kind of claims fall within the Reata Construction waiver by suit, addressing the City's contention
that claims should only be considered to be "germane" to the governmental unit's claims if they
involve "offsets and defense matters rather than a counterclaim." 143 S.W.3d 375, 381 (Tex.
App.--Dallas 2004, no pet.). The court considered the usual meaning of "germane," reviewing the
cases cited in Reata Construction, and determined that "germane" is not limited to the narrow
definition proposed by the City. Id. at 381-83. We agree that it is not necessary for Precision Solar's
counterclaim to mirror the cause of action brought by the State. Instead, Precision Solar's claims
will fall within the Reata Construction waiver if they are related, connected, or pertinent to the
matter in controversy. See id. at 381.

 In determining whether one claim is germane or incident to another, it is helpful to
consider issues related to res judicata and compulsory and permissive counterclaims. "Texas law
forbids splitting one claim into several suits when a single suit will suffice," Schneider Nat'l
Carriers, Inc. v. Bates, 147 S.W.3d 264, 278 (Tex. 2004), and causes of action arising out of the
same facts should, if practicable, be litigated in the same lawsuit. Morris v. Landoll Corp., 856
S.W.2d 265, 268 (Tex. App.--Fort Worth 1993, writ denied) (citing Barr v. Resolution Trust Corp.,
837 S.W.2d 627, 630 (Tex. 1992)); see also Ray Ferguson Interests, Inc. v. Harris County Sports
& Convention Corp., 169 S.W.3d 18, 26 (Tex. App.--Houston [1st Dist.] 2004, no pet.) (holding
that by asserting compulsory counterclaims in response to suit brought by company, governmental
entity waived immunity from suit). Rule 97 of the rules of civil procedure provides that a party must
assert any counterclaim "not the subject of a pending action, which at the time of filing . . . the
pleader has against any opposing party, if it arises out of the transaction or occurrence that is the
subject matter of the opposing party's claim" and does not require the presence of third parties over
whom the trial court could not exercise jurisdiction. Tex. R. Civ. P. 97(a) ("Compulsory
Counterclaims"). A party may assert a counterclaim "whether or not arising out of the transaction
or occurrence that is the subject matter of the opposing party's claim," except that a tort counterclaim
may only be asserted in response to a contractual demand if it "arises out of or is incident to or is
connected with same." Tex. R. Civ. P. 97(b), (g). Under principles of res judicata, a party may not
re-litigate claims already decided in an earlier suit or assert new claims arising out of the same
subject matter as the previous suit and that should have been litigated in the earlier suit. Bates, 147
S.W.3d at 278; Cadle Co. v. Wilson, 136 S.W.3d 345, 354 (Tex. App.--Austin 2004, no pet.) (citing
Barr, 837 S.W.2d at 628).

 To succeed on its claims for breach of warranty and breach of contract, the State will
have to show that the signals were defective and poorly made and that Precision Solar did not live
up to its promises once any defects were made known. Precision Solar's claim for business
disparagement will in part require contrary findings that the signals functioned as intended and that
it satisfied its warranties and contracts in the event that any signals malfunctioned. Although the
elements of the claims differ, the core facts are the same, and the issues of whether the signals
functioned as intended or were defective and whether Precision Solar offered or failed to remedy any
defects are necessary to the claims asserted by both the State and Precision Solar. If Precision Solar
were not to bring this counterclaim now and attempt to raise it later, sovereign immunity issues
aside, factual determinations made in this proceeding about the quality of the signals and whether
Precision Solar breached any contracts or warranties would be res judicata on Precision Solar's later
claim for business disparagement. See Bates, 147 S.W.3d at 279; Cadle Co., 136 S.W.3d at 354.

 We hold that Precision Solar's intentional tort counterclaim does not fall outside the
State's waiver of immunity effected by its filing suit against Precision Solar. See Ray Ferguson
Interests, 169 S.W.3d at 26 (holding that by asserting compulsory counterclaims in response to suit
brought by company, governmental entity waived immunity from suit for company's claims for
intentional torts of fraud and conspiracy); see also City of Carrollton v. Golf Works, Inc., No. 05-03-01831-CV, 2004 Tex. App. LEXIS 6952, at *2 (Tex. App.--Dallas July 30, 2004, no pet.) (mem.
op.) (by suing for breach of contract and breach of warranty, City waived immunity against tort
counterclaims arising out of same contract). We further hold that under the facts of this case,
Precision Solar's claim for business disparagement arises out of, is incident to, or is connected with
the sale and quality of the traffic signals, as are the State's claims for breach of contract and breach
of warranty. See Tex. R. Civ. P. 97. Thus, we hold that Precision Solar's claim is sufficiently
germane to the State's claims to survive the State's plea to the jurisdiction. See Redbird Dev. Co.,
143 S.W.3d at 383 ("The City's and RDC's claims arise from the same transaction: the lease of
Redbird Airport land and facilities. . . . Resolution of the rights of the parties before us depends on
facts pertinent to the parties' conduct regarding the same lease. . . . It is clear that RDC's
counterclaim is 'compulsory' in that it 'arises out of the transaction or occurrence that is the subject
matter of the opposing party's claim.'").


Conclusion


 Because Precision Solar's claim is sufficiently connected to the State's claims and
after viewing the pleadings in favor of Precision Solar and taking its allegations of facts as true, see
Dearing, 150 S.W.3d at 458, we hold that by suing Precision Solar for breach of contract and breach
of warranty, the State waived its sovereign immunity from suit with regard to Precision Solar's
counterclaim. We affirm the trial court's denial of the State's plea to the jurisdiction.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: March 17, 2006
1. The State also sued Texas Highway Products Ltd., which distributes Precision Solar's
products, but Texas Highway Products is not a party to this appeal.
2. Immunity from suit is properly made the subject of a plea to the jurisdiction, while
immunity from liability is an affirmative defense. Texas Dep't of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 224 (Tex. 2004).
3. The supreme court handed down its opinion in April 2004, and in October 2004, a majority
voted to grant rehearing. The court heard oral argument on rehearing on December 2, 2004.
4. See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 2005 & Supp. 2005).
5. We note that the legislature itself used both terms in section 101.025 of the Tort Claims
Act. That section, titled, "Waiver of Governmental Immunity; Permission to Sue," provides,
"Sovereign immunity to suit is waived and abolished to the extent of liability created by this
chapter." Id. § 101.025(a) (West 2005) (emphasis added).
6. The State argues that the supreme court has held that "the State does not waive immunity
from suit when it brings suit," citing to Bates v. Republic of Texas, 2 Tex. 616, 618-19 (1847) ("set-off, though not denominated a suit, is in the nature of a cross action" and "cannot be instituted or set
up against the government without its consent"), and Borden v. Houston, 2 Tex. 594, 611-13 (1847)
(refusing to allow defendants to remit bonds as set-off to customs monies owed by defendants to
government; "The government can not be coerced in any manner."). But see Bitter v. Bexar County,
11 S.W.2d 163, 166 (Tex. Comm'n App. 1928, judgm't adopted) (tax collector "did not sue the
county . . . ; the County sued him for recovery of the 'residue'; and in computing that 'residue' it was
necessary . . . to take all amounts to which he was lawfully entitled . . . into consideration"; court
distinguished Borden and Bates, noting that Borden's and Bates's claims arose "in transactions
distinct from and independent of those out of which the obligations sought to be enforced by the
[governmental] plaintiffs arose" and that government was "at all times entitled to have the whole of
the specific funds involved, and not merely a residue or balance thereof").


 The supreme court has not relied on Bates or Borden for the proposition that a counterclaim
may not be brought against and in response to a suit filed by the State since 1881. See Dean v. State,
54 Tex. 313, 314 (1881); Ex parte Towles, 48 Tex. 413, 447-48 (1877) ("The courts take jurisdiction
of suits against the State, whether for money or for land certificates, only when the State has given
its consent by statute, and then the jurisdiction is taken by such tribunals and under such regulations
as the statute directs."); Chevallier's Adm'r v. State, 10 Tex. 315, 316 (1853). Although the supreme
court has not expressly overruled Bates and Borden, it has more recently stated that when the State
files suit, it becomes bound by the court's judicial determination and the defense may raise all
matters properly defensive, including counterclaims germane to the State's claims. Anderson,
Clayton & Co. v. State ex rel. Allred, 62 S.W.2d 107, 110 (Tex. 1933); see also Reata Constr. Corp.
v. City of Dallas, No. 02-1031, 2004 Tex. LEXIS 303, at *6-7 (Tex. April 2, 2004) (pending on
reh'g) ("when a governmental entity files suit against a party, that entity waives, at a minimum,
immunity from suit for counterclaims filed as a consequence of the suit").
7. In arguing that sovereign immunity is broader and more protective than governmental
immunity, the State cites a case holding that a political subdivision may not assert immunity against
the State, from which the subdivision derives its immunity. See Texas Workers' Comp. Comm'n v.
City of Eagle Pass, 14 S.W.3d 801, 803-04 (Tex. App.--Austin 2000, pet. denied) (political
subdivision's "derivative" immunity protects against suits by private parties but does not act "as a
shield against the State, from which the subdivision derives its immunity"). That case did not
address whether the subdivision would be able to cross-claim against the State in the same suit.
8. The State argues that policy considerations require that Precision Solar not be allowed to
bring its counterclaim against the State. However, in deciding this case, we are simply applying the
law as set forth by the supreme court, and policy considerations do not enter into our decision-making. See Font v. Carr, 867 S.W.2d 873, 879 (Tex. App.--Houston [1st Dist.] 1993, writ dism'd
w.o.j.); see also Swilley v. McCain, 374 S.W.2d 871, 875 (Tex. 1964) (supreme court's decisions
are binding on lower courts); Ran Ken, Inc. v. Schlapper, 963 S.W.2d 102, 107 (Tex. App.--Austin
1998, pet. denied) (extension of supreme court precedent is left to that court, and lower courts must
conscientiously follow supreme court's determinations of law; "[w]hile courts of appeals are often
called on to recognize new exceptions to legal principles, we must be loath to ignore a deliberate and
express position enunciated by a higher court").
9. The State strives to distinguish cases holding that the State may waive its immunity by
seeking damages, arguing that the factual or procedural backgrounds of those cases differs from the
case at hand. The State asserts that we should instead follow Borden and Bates, which it notes have
never been explicitly overruled. However, Borden and Bates also involved situations different than
this suit; Bates has been summarized by the supreme court as standing for the proposition that, "in
the absence of a statute authorizing it, in an action by the State or any municipality for taxes,
offsetting of an indebtedness due by the State or municipality to the tax debtor will not be allowed." 
State v. Humble Oil & Refining Co., 169 S.W.2d 707, 708 (Tex. 1943).